No. 22-1453

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

KHALFAN KHAMIS MOHAMED, *et al.*,

Plaintiff-Appellee,

v.

JONES, *et al.*,

Defendants-Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

The Honorable R. Brooke Jackson, United States District Judge
Civil No. 1:20-cv-2516

**BRIEF FOR APPELLANTS**

> BRIAN M. BOYNTON
>  *Acting Assistant Attorney General*
> COLE FINEGAN
>  *United States Attorney*
> BARBARA L. HERWIG
>  (202) 514-5425
> LOWELL V. STURGILL JR.
>  (202) 514-3427
>  *Attorneys, Civil Division*
>  *Appellate Staff, Room 7527*
>  *U.S. Department of Justice*
>  *950 Pennsylvania Avenue, N.W.*
>  *Washington, D.C. 20530*

***ORAL ARGUMENT REQUESTED***

# TABLE OF CONTENTS

Statement of Related Appeals

Glossary

Statement of Jurisdiction ................................................................................................1

Statement of the Issues ..................................................................................................1

Statement of the Case ....................................................................................................2

Summary of Argument ...................................................................................................6

Statement of the Standard of Review ..........................................................................7

Argument .........................................................................................................................8

I.    Plaintiff's Eighth Amendment Excessive-Force and Failure-to-
      Intervene Claims Should be Dismissed Because Special Factors
      Counsel Against Extending a *Bivens* Remedy to Those New
      Contexts .............................................................................................................8

   A. Legal Background .........................................................................................8

   B. This Court Should Not Extend *Bivens* to Plaintiff's Eighth
      Amendment Excessive-Force and Failure-to-Intervene Claims ..................13

      1. This Court's Decision in *Silva* Precludes a Bivens Extension
         to Eighth Amendment Excessive-Force and Failure-to-
         Intervene Claims ......................................................................................13

      2. Even Apart from *Silva*, the District Court's Refusal to
         Dismiss Mohamed's Eighth Amendment Excessive-Force
         and Failure-to-Intervene Claims Cannot Stand ..........................................17

         a. Mohamed's Excessive-Force and Failure-to-Intervene
            Claims Present New Bivens Contexts ....................................................17

            i.   Excessive Force Claim..................................................................18

            ii.  Failure-to-Intervene Claim...........................................................20

b.  Special Factors Preclude Extending *Bivens* Remedies to Eighth Amendment Excessive-Force and Failure-to-Intervene Claims ...................................................................23

II.   This Court Has Jurisdiction Over This Appeal Pursuant to the Collateral Order Doctrine ..................................................................30

Conclusion..................................................................................................40

Statement Regarding Oral Argument

Certificate of Compliance

Certificate of Digital Submission

Certificate of Service

Addenda:

Magistrate Judge Order (Feb. 22, 2022), Dkt. 103

Order (May 18, 2022), Dkt. 120

Order (Oct. 24, 2022), Dkt. 150

## TABLE OF AUTHORITIES

**Cases:**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................................9

*Alsop v. Federal BOP*,
    No. 22-1933, 2022 WL 16734497 (3d Cir. Nov. 7, 2022) .........................30

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ...................................................................................7

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) .................................................................................40

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 8, 33

*Bistrian v. Levi*,
    912 F.3d 79 (3d Cir. 2018) ......................................................................22

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ........................................ 1, 3-20, 21-30, 32, 33, 34, 35, 37, 38, 39

*Buenrostro v. Fajardo*,
    770 F. App'x 807 (9th Cir. 2019) .............................................................24

*Bulger v. Hurwitz*,
    2023 WL 2335958 (4th Cir. Mar. 3, 2023) ................................21-22, 24, 29

*Bush v. Lucas*,
    462 U.S. 367 (1983) .................................................................................12

*Carlson v. Green*,
    446 U.S. 14 (1980) ........................................... 4, 8, 9, 14, 18, 19, 21, 22, 23, 29, 30, 34

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) .............................................................31, 32, 34, 39, 40

*Conn v. Gabbert,*
    526 U.S. 286 (1999) ............................................................................................... 32

*Correctional Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ........................................... 4, 8, 9, 11, 12, 14, 25, 26

*Davis v. Passman,*
    442 U.S. 228 (1979) ............................................................... 8, 9, 21, 22, 34

*Digital Equipment Corp. v. Desktop Direct, Inc.,*
    511 U.S. 863 (1994) .......................................................................... 34, 38

*Egbert v. Boule,*
    142 S. Ct. 1793 (2022) ................................. 4-7, 10-17, 19, 20-28, 30, 33, 35

*Estelle v. Gamble,*
    429 U.S. 97 (1976) ................................................................................. 18

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ................................................................. 4, 20, 21, 23

*Graber v. Doe,*
    59 F.4th 603 (3d Cir. 2023) .................................. 31, 32, 33, 34, 35, 36, 37, 38, 39, 40

*Greene v. United States,*
    No. 21-5398, 2022 WL 13638916 (6th Cir. Sept. 13, 2022) ...................................... 30

*Helling v. McKinney,*
    509 U.S. 25 (1993) ................................................................................. 18

*Hernandez v. Mesa,*
    885 F.3d 811 (5th Cir. 2018) ........................................................................... 27

*Hernandez v. Mesa,*
    140 S. Ct. 735 (2020) ........................................................... 10, 14, 21, 35, 38

*Himmelreich v. Federal BOP,*
    5 F.4th 653 (6th Cir. 2021) ................................................................ 36, 37, 38

*Hoffman v. Preston,*
    No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022) ..................................... 24

*Hudson v. McMillian*,
    503 U.S. 1 (1992) ............................................................................................15

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ..........................................................................................9

*Johnson v. Glick*,
    481 F.2d 1028 (2d Cir. 1973) ........................................................................18

*Jones v. North Carolina Prisoners' Labor Union, Inc.*,
    433 U.S. 119 (1977) ........................................................................................18

*Loumiet v. United States*,
    948 F.3d 376 (D.C. Cir. 2020) ......................................................................21

*Mejia v. Miller*,
    2023 WL 2350630 (9th Cir. Mar. 2, 2023) ........................................... 19, 30

*Minneci v. Pollard*,
    565 U.S. 118 (2012) ..................................................................................... 9, 26

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ................................................................................... 32, 35

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ........................................................................................31

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ........................................................................................35

*Oliva v. Nivar*,
    973 F.3d 438 (5th Cir. 2020) .........................................................................26

*Pearson v. Callahan*, 555 U.S. 223 (2009) .........................................................32

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ..........................................................................................21

*Pettibone v. Russell*,
    59 F.4th 449 (9th Cir. 2023) ..................................................................... 21, 25

*Porter v. Nussle*,
    534 U.S. 516 (2002)..................................................................................28-29

*Schweicker v. Chilcky*,
    487 U.S. 412 (1988)..........................................................................................28

*Sell v. United States*,
    539 U.S. 166 (2003)..........................................................................................38

*Shoop v. Twyford*,
    142 S. Ct. 2037 (2022) .....................................................................................39

*Shorter v. United States*,
    12 F.4th 366 (3d Cir. 2021)............................................................................22

*Silva v. United States*,
    45 F.4th 1134 (10th Cir. 2022) ...............................1, 5, 6, 7, 13, 14, 15, 17, 23-24, 30

*Simmat v. U.S. BOP*,
    413 F.3d 1225 (10th Cir. 2005) ......................................................................26

*In re Stegall*,
    865 F.2d 140 (7th Cir. 1989)...........................................................................21

*Swint v. Chambers Cty. Comm'n.*,
    514 U.S. 35 (1995) .......................................................................................31, 32

*Tate v. Harmon*,
    54 F.4th 839 (4th Cir. 2022) ......................................................................19, 21

*United States v. Bin Laden*,
    156 F. Supp. 2d 359 (S.D.N.Y. 2001) ..............................................................2

*United States v. Salim*,
    287 F. Supp. 2d 250 (S.D.N.Y. 2003) ..............................................................2

*United States v. Stanley*,
    483 U.S. 669 (1987)....................................................................................11, 37

*United States v. Tucker*,
    745 F.3d 1054 (10th Cir. 2014) ........................................................................7

*Vanderklok v. United States*,
　868 F.3d 189 (3d Cir. 2017) ............................................................................26

*Vega v. United States*,
　881 F.3d 1146 (9th Cir. 2018) .........................................................................24

*Whitley v. Albers*,
　475 U.S. 312 (1986) ...........................................................18, 19, 22-23, 27

*Wilkie v. Robbins*,
　551 U.S. 537 (2007) ...................................................................16, 35, 38

*Will v. Hallock*,
　546 U.S. 345 (2006) ..................................................... 33, 34, 37, 38, 39, 40

*Wood v. Moss*,
　572 U.S. 744 (2014) ..........................................................................................40

*Ziglar v. Abbasi*,
　582 U.S. 120 (2017) ........................ 1, 3, 6, 8-11, 13, 14, 18, 20-29, 33, 34, 35, 36, 37

## Constitution:

U.S. Constitution:

　First Amendment ................................................................................................16
　Fourth Amendment ..........................................................4, 8, 10, 11, 12, 26
　Fifth Amendment ...............................................................................................22
　Eighth Amendment ................................. 1-8, 13-19, 22, 23, 24, 27, 28, 30, 31, 32, 34

## Statutes:

28 U.S.C. § 1291 ...............................................................................1, 30-31
28 U.S.C. § 1331 ...........................................................................................1

42 U.S.C. § 1983 .........................................................................................28
42 U.S.C. § 1997e(a) ...................................................................................29
42 U.S.C. § 1997e(e) ...................................................................................30

Civil Rights of Institutionalized Persons Act (CRIPA),
    Pub. L. No. 96-247, 94 Stat. 349 (1980) ........................................................28

Prisoner Litigation Reform Act (PLRA),
    Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321-66 (1996) ............................28

Prison Rape Elimination Act of 2003:

    34 U.S.C. §§ 30301-30309 ............................................................................29
    34 U.S.C. § 30302(6) ....................................................................................29
    34 U.S.C. § 30302(7) ....................................................................................29
    34 U.S.C. § 30307(a)(1)-(3) ........................................................................29

Violence Against Women Reauthorization Act of 2013, § 1101(a),
    Pub. L. No. 113-4, 127 Stat. 54, 134.9 ......................................................30

**Regulations**:

28 C.F.R. § 542.10 ..............................................................................................23
28 C.F.R. § 542.15 ..............................................................................................23
28 C.F.R. § 542.16 ..............................................................................................23
28 C.F.R. § 542.18 ..............................................................................................23

**Rules:**

Fed. R. App. P. 4 ................................................................................................1

**STATEMENT OF RELATED APPEALS
PURSUANT TO CIR. R. 28.2(C)(1)**

Counsel for appellants are aware of no prior or related appeals within the meaning of Tenth Circuit Rule 28.2(C)(1).

**Glossary**

| | |
|---|---|
| APP | Appendix |
| BOP | Bureau of Prisons |
| CRIPA | Civil Rights of Institutionalized Persons Act |
| FTCA | Federal Tort Claims Act |
| PLRA | Prisoner Litigation Reform Act |

## Statement of Jurisdiction

In this action brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), plaintiff invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331. On May 18, 2020, the district court denied defendants' motion to dismiss plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims based on *Ziglar v. Abbasi*, 582 U.S. 120 (2017). Defendants filed a timely motion for reconsideration of that ruling, which the district court denied on October 24, 2022. Defendants filed a timely notice of appeal from both district court orders on December 22, 2022. *See* Fed. R. App. P. 4. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. *See infra* pp. 30-40.

## Statement of the Issues

1.     Whether, under controlling Circuit precedent, *see Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims should be dismissed because special factors counsel against extending *Bivens* remedies to those contexts.

2.     Whether this Court has jurisdiction to review the district court's refusal to dismiss plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims on special-factors grounds under the collateral order doctrine because extending *Bivens* remedies to those claims would be effectively unreviewable after a final judgment and would contravene the separation of powers.

## Statement of the Case

Plaintiff Khalfan Khamis Mohamed (Mohamed) is an inmate at the United States Penitentiary Florence ADMAX (ADX Florence), Appendix (App.) Vol. 2 at 314, having been convicted for his role in the al Qaeda-directed bombings of the U.S. Embassies in Tanzania and Kenya in August 1998, *see United States v. Bin Laden*, 156 F. Supp. 2d 359, 362 (S.D.N.Y. 2001). While in Bureau of Prisons (BOP) custody, Mohamed also helped a bombing-case co-conspirator attack a correctional officer. *See United States v. Salim*, 287 F. Supp. 2d 250, 294-95, 355 (S.D.N.Y. 2003).

1.      Mohamed filed this action against the United States and various BOP employees in their individual capacities, asserting a variety of claims. *See* App. Vol. 1 at 15, Vol. 2 at 156. Mohamed's individual-capacity claims included, among others, Eighth Amendment excessive-force claims against three defendants (Brush, Miller, and Espinoza), and Eighth Amendment failure-to-intervene claims against three other defendants (Armijo, Murton, and Osagie).

Those claims all concern conduct Mohamed alleges occurred in August 2018. After he declared his intent to go on a hunger strike, Mohamed was moved to the ADX Florence law library so officers could remove commissary food items from his cell. *See* App. Vol. 2 at 161-62. Mohamed alleges that defendant Brush ordered him to go to defendant Armijo's office, *see* App. Vol. 2 at 163; that he refused to go, *see id.*; and that defendant Brush handcuffed him so that Brush and other officers could escort him out of the library. *See id.*

Despite the order to go to defendant Armijo's office, Mohamed stopped without warning at his cell as they passed it. *See* App. Vol. 2 at 163. At that point, defendant Brush allegedly threw Mohamed against the wall, smashed his head, and told him to stop resisting. *See* App. Vol. 2 at 163-64. Mohamed alleges that he was then placed in leg restraints, that 10 or more unidentified officers assaulted him, *see* App. Vol. 2 at 164-65, and that those officers beat him as they moved him to an observation cell, *see* App. Vol. 2 at 165-66. Mohamed alleges that defendants Armijo and Murton witnessed those beatings, *see* App. Vol. 2 at 166, and that once he reached the observation cell, defendants Miller and Espinoza beat him, under defendant Murton's direction, *see* App. Vol. 2 at 167-68. Mohamed asserts that defendant Osagie was present outside the cell but failed to intervene. *See* App. Vol. 2 at 169. The complaint alleges that Mohamed was later found guilty of attempted assault by a Disciplinary Hearing Officer based on his actions arising out the same incident. *See* App. Vol. 2 at 172. The complaint seeks compensatory damages against defendants Brush, Miller, Espinoza, Armijo, Murton, and Osagie in their individual capacities, among other relief. *See* App. Vol. 2 at 185.

2.     Defendants Brush, Miller, Espinoza, Armijo, Murton, and Osagie moved to dismiss Mohamed's Eighth Amendment *Bivens* claims against them because those claims involve contexts in which the Supreme Court has not yet recognized a *Bivens* remedy and because special factors, including the separation-of-powers concerns identified in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), counsel against implying a *Bivens* remedy for those claims. *See* App. Vol. 2 at 237.

The district court denied the motion. The court held that there is no meaningful difference between an Eighth Amendment excessive-force claim and the Eighth Amendment medical-indifference claim for which *Carlson v. Green*, 446 U.S. 14 (1980), recognized a *Bivens* remedy. The court thus held that an Eighth Amendment excessive-force claim does not present a new *Bivens* context. *See* App. Vol. 2 at 300-01. The court also rejected defendants' argument that special factors preclude a *Bivens* extension to the Eighth Amendment excessive-force context, concluding that neither the BOP's administrative grievance program nor equitable remedies "would redress plaintiff's past injuries," App. Vol. 2 at 301, and that an individual damages remedy for constitutionally excessive use of force would not interfere with BOP operations, *see id.* The court held that an Eighth Amendment failure-to-intervene claim does not present a new *Bivens* context because certain other courts have read *Farmer v. Brennan*, 511 U.S. 825 (1994), as standing for that proposition. App. Vol. 2 at 303.

Defendants moved for reconsideration based on the Supreme Court's intervening decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which declined to authorize a *Bivens* remedy for a Fourth Amendment excessive-force claim. *Egbert* held that while that case and *Bivens* itself involved similar allegations of excessive force, those "superficial similarities are not enough to support the judicial creation of a cause of action." *Id.* at 1805. *Egbert* also recognized that the BOP's administrative remedy program counsels against recognizing a *Bivens* remedy. *See id.* at 1806 (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

4

While defendants' motion for reconsideration was pending, defendants notified the court of *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), decided on August 1, 2022, which held that there is no *Bivens* remedy for an Eighth Amendment excessive-force claim. App. Vol. 2 at 311. *Silva* held that an Eighth Amendment excessive-force claim presents a new *Bivens* context, 45 F.4th at 1137, and that the BOP's administrative remedy program precludes recognizing a new-context *Bivens* remedy, *id.* at 1141.

The district court denied the motion for reconsideration. App. Vol. 2 at 314. Despite *Silva*, which the court failed to address in relevant part, the court reiterated its view that an Eighth Amendment excessive-force claim does not present a new *Bivens* context, App. Vol. 2 at 324, and that the BOP's administrative remedy scheme does not preclude recognition of a new *Bivens* remedy, App. Vol. 2 at 326-29. The court also concluded that recognizing a *Bivens* Eighth Amendment excessive-force or failure-to-intervene claim would not inhibit federal prison officials in the appropriate discharge of their duties, App. Vol. 2 at 330, even though *Egbert* recently acknowledged similar concerns and warned that the *Bivens* special-factors analysis "does not invite federal courts to independently assess the costs and benefits of implying a cause of action," 142 S. Ct. at 1805.

Defendants filed a timely notice of appeal from the district court's order denying the motion to dismiss Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims and the court's order denying defendants' motion for reconsideration. *See* App. Vol. 2 at 333.

5

## Summary of Argument

1.    *Silva v. United States*, 45 F. 4th 1134 (10th Cir. 2022), forecloses Mohamed's Eighth Amendment *Bivens* excessive-force and failure-to-intervene claims. *Silva* held that the BOP's administrative remedy program is a special factor that precludes extending *Bivens* to an Eighth Amendment excessive-force claim. *Silva*, which defendants brought to the district court's attention before the court denied their motion for reconsideration, thus directly bars plaintiff's excessive-force claim.

*Silva*'s rationale also forecloses plaintiff's failure-to-intervene claim. Indeed, the case for not extending *Bivens* to a failure-to-intervene claim is, if anything, even stronger than the case for not extending *Bivens* to an excessive-force claim. A failure to intervene is one step removed from the actual application of excessive force, much more indeterminate than the use of excessive force, and capable of arising in many more contexts. Thus, extending *Bivens* to failure-to-intervene claims would adversely affect the operation of federal prisons, and the Constitution's separation of powers, on an even more wide-ranging basis.

Although the Court need not reach the question, the district court also should have dismissed plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims, even apart from *Silva*, based on *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Abbasi* and *Egbert* show that those claims involve new *Bivens* contexts and that multiple special factors counsel against recognizing those claims.

The district court held that those claims are indistinguishable from an Eighth Amendment claim for the denial of medical care, but that is incorrect. Excessive-force and failure-to-intervene claims are governed by different and more indeterminate standards than a medical-treatment claim, and present a far more wide-ranging risk to the proper operation of prisons than a medical-treatment claim.

2.     This Court has jurisdiction under the collateral order doctrine because the district court's order extending *Bivens* to new contexts is conclusive, resolves important issues separate from the merits, and would be effectively unreviewable on appeal from a final judgment. "Recognizing a Bivens cause of action 'is an extraordinary act that places great stress on the separation of powers,'" *Egbert*, 142 S. Ct. at 1806 n.3, and is separate from the merits. Similar to interlocutory orders denying qualified immunity (which are immediately appealable), interlocutory orders extending *Bivens* remedies to new contexts also entail "substantial social costs," including "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* at 1807 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Those harms are not cured by a final judgment in a *Bivens* defendant's favor.

### Statement of the Standard of Review

This Court reviews whether a complaint identifies a cognizable *Bivens* claim de novo. *See Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022). This Court also considers de novo whether the collateral order doctrine provides appellate jurisdiction. *See United States v. Tucker*, 745 F.3d 1054, 1062 (10th Cir. 2014).

**Argument**

I.    **Plaintiff's Eighth Amendment Excessive-Force and Failure-to-Intervene Claims Should be Dismissed Because Special Factors Counsel Against Extending a *Bivens* Remedy to Those New Contexts.**

A.    **Legal Background.**

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001))). *Bivens* held that, despite the absence of a statutory cause of action, law-enforcement officials acting under color of federal law could be sued for money damages for using excessive force in conducting a warrantless search and arrest in violation of the Fourth Amendment. Subsequently, the Supreme Court recognized an implied damages action to redress an equal-protection violation involving discrimination in congressional-staff employment, *Davis v. Passman*, 442 U.S. 228 (1979), and to redress an Eighth Amendment violation involving the failure to treat an inmate's severe asthma attack, resulting in his death, *Carlson v. Green*, 446 U.S. 14 (1980).

*Bivens*, *Davis*, and *Carlson* were decided at a time when, "as a routine matter," the Supreme Court "would imply causes of action not explicit in [a statute's] text" on the assumption that courts could properly "provide such remedies as [were] necessary to make effective" the statute's purpose. *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting

*J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). In that era, the Court's approach to creating such actions under the Constitution was correspondingly lax.

Subsequently, however, the Court repudiated, on separation-of-powers grounds, the "*ancien regime*" from which *Bivens* arose. *Abbasi*, 582 U.S. at 131(quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). As a result, for nearly four decades now, the Supreme Court has "consistently refused to extend *Bivens* liability" to any new contexts, including those involving prisoner-detention. *Malesko*, 534 U.S. at 68; *see Minneci v. Pollard*, 565 U.S. 118, 120 (2012); *Abbasi*, 582 U.S. at 135-36 (listing cases).

To protect the separation of powers from continued encroachment, *Abbasi* set forth stringent criteria for analyzing whether a court may recognize a *Bivens* remedy. At the threshold, courts must determine if the asserted claim arises in a new context—that is, if it differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 582 U.S. at 139. The Court identified "*Bivens, Davis,* and *Carlson*" as "the only instances in which the Court has approved of an implied damages remedy" for constitutional violations. *Id.* at 131. Measured against those three cases, a claim may present a new *Bivens* context based on, among other reasons, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous

*Bivens* cases did not consider." *Id.* at 139-40. Even small differences constitute a new context, as "a modest extension is still an extension." *Id.* at 147; *see Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("[O]ur understanding of a 'new context' is broad").

If the asserted cause of action arises in a new context, courts then must ask whether "special factors" counsel against inferring such an action absent "affirmative action by Congress." *Abbasi*, 582 U.S. at 136 (internal quotation marks omitted). This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "[T]o be a 'special factor,'" a circumstance "must cause a court to hesitate before answering that question in the affirmative." *Id.* A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 137 (emphasis added). Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that existing process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

The Supreme Court reaffirmed and further clarified the above principles in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which declined to recognize a *Bivens* remedy for a Fourth Amendment excessive-force claim against a Border Patrol agent while interdicting persons or goods illegally entering or exiting the United States. *Egbert* clarified that *Bivens* "does not invite federal courts to independently assess the costs and benefits of implying a cause of action." 142 S. Ct. at 1805.

Instead, the Supreme Court explained, a court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" 142 S. Ct. at 1805 (quoting *Abbasi*, 582 U.S. at 136) (emphasis in original). Accordingly, *Egbert* emphasized, "a court should not inquire, as the Court of Appeals did here, whether *Bivens* relief is appropriate in light of the balance of circumstances in the 'particular case.'" *Id.* (quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987)). "Rather, under the proper approach, a court must ask '[m]ore broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* (alteration in original) (quoting *Stanley*, 483 U.S. at 681). "If so, or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* (quoting *Abbasi*, 582 U.S. at 140, 148). Applying those principles, *Egbert* held that a court is "plainly" not competent to authorize a damages action against Border Patrol agents. *Id.* at 1806.

*Egbert* also declined to recognize a Fourth Amendment excessive-force claim against Border Patrol agents because "Congress has provided alternative remedies for aggrieved parties in Boule's position." 142 S. Ct. at 1806. "In *Malesko*," the Court noted, "we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" *Id.* (citing *Malesko*, 534 U.S. at 74). *Egbert* held that similar administrative remedies provided by the Border Patrol barred recognizing a *Bivens* Fourth Amendment excessive-force claim against Border Patrol agents. *See id.* (noting that Border Patrol regulations require the

Border Patrol to accept grievances from any persons wishing to lodge a complaint alleging violations of the standards for its enforcement activities and to investigate those allegations).

Of particular significance, *Egbert* rejected the respondent's contention that the Border Patrol's grievance process is inadequate "because he is not entitled to participate and has no right to judicial review of an adverse determination." 142 S. Ct. at 1806. As the Supreme Court explained, "we have never held that a *Bivens* alternative must afford rights to participation or appeal," as "*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers.'" *Id.* (quoting *Malesko*, 534 U.S. at 71). In other words, the "focus" of the *Bivens* alternative-remedy analysis is "whether the Government has put in place safeguards to 'preven[t]' constitutional violations 'from recurring.'" *Id.* (alteration in original) (quoting *Malesko*, 534 U.S. at 71).

*Egbert* also emphasized that "whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." 142 S. Ct. at 1807. Thus, "[s]o long as Congress or the Executive has created a remedial process that *it* finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (emphasis added) (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

12

**B.      This Court Should Not Extend *Bivens* to Plaintiff's Eighth Amendment Excessive-Force and Failure-to-Intervene Claims.**

**1.      This Court's Decision in *Silva* Precludes a *Bivens* Extension to Eighth Amendment Excessive-Force and Failure-to-Intervene Claims.**

In *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), this Court, applying *Abbasi* and *Egbert*, held that an Eighth Amendment excessive-force claim presents a new *Bivens* context and is "foreclosed by the availability of the BOP Administrative Remedy Program." *Id.* at 1142. *Silva* requires dismissing Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims.

a.      The plaintiff in *Silva*, who like Mohamed was a prisoner at ADX Florence, filed a *Bivens* action against an ADX officer asserting an Eighth Amendment excessive-force claim. *See Silva*, 45 F.4th at 1136. Silva alleged that the officer entered his cell and assaulted him by "slamming him on the floor, jumping on his back, and 'applying painful pressure with his knee.'" *Id.* Those actions, Silva contended, caused injuries to his back, right leg, and knee. *Id.* The *Bivens* defendant moved to dismiss the complaint for failure to state a claim, and the district court granted that motion. *Id.* at 1136-37. Silva appealed, but this Court affirmed.

Applying *Abbasi*'s two-step framework, this Court concluded that an Eighth Amendment excessive-force claim "clearly constitutes an expansion of *Bivens*." 45 F.4th at 1137. In support of that conclusion, *Silva* noted that "[t]he distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to

13

medical needs claim—which the Supreme Court recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment." *Id.* (stating that "'[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized'") (alteration in original) (quoting *Hernandez*, 140 S. Ct. at 743).

Regarding the second *Abbasi* step, *Silva* relied on *Egbert*'s clarification that "courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs." 45 F.4th at 1141 (alteration in original) (quoting *Egbert*, 142 S. Ct. at 1804). In declining to recognize an Eighth Amendment *Bivens* claim for excessive force, *Silva* "focus[ed its] analysis on the alternative remedial schemes available to Plaintiff." *Id.* This Court endorsed the defendant's argument that "the BOP Administrative Remedy Program qualifies as an adequate alternative remedy for Plaintiff's claim," and held that its "availability . . . offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id.*; *see also id.* (noting that "the Supreme Court has long since described the BOP Administrative Remedy Program as an adequate remedy") (citing *Malesko*, 534 U.S. at 74). *Silva* also noted *Egbert*'s clarification that *Bivens* "'is concerned solely with deterring the unconstitutional acts of individual officers." *Id.* (quoting *Egbert*, 142 S. Ct. at 1806).

b.     *Silva* plainly requires dismissing Mohamed's Eighth Amendment excessive-force claim. *Silva*'s rationale applies to any kind of Eighth Amendment excessive-force claim, and is in no way limited to the facts of that case—which closely resemble Mohamed's contentions here in any event.

*Silva* also precludes extending *Bivens* to an Eighth Amendment failure-to-intervene claim. An Eighth Amendment excessive-force claim and an Eighth Amendment failure-to-intervene claim both flow from the "settled rule that "'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (alteration in original). Moreover, if anything, the case for not extending *Bivens* to Eighth Amendment "failure to intervene" is even stronger than the case for not extending *Bivens* to Eighth Amendment "excessive force." A failure to intervene is one step removed from the actual application of harmful force, and that kind of claim could be asserted in far more contexts than an excessive-force claim—including against any officer who might have been in the vicinity of the alleged excessive force; any officer who arguably should have been in the vicinity; and any officer who was or arguably should have been able to witness the use of force by way of closed-circuit camera, intercom, or a cell phone.

What constitutes an actionable failure to intervene also is much more indeterminate than what constitutes excessive force. A *Bivens* extension to this context, then, would threaten prison officials with individual damages awards based on an

15

infinite variety of alleged types of inaction, as well as for claims that involve multiple steps of causation, adversely affecting the operation of federal prisons—and the Constitution's separation of powers—on a far more wide-ranging basis than an Eighth Amendment excessive-force claim. *Cf. Wilkie v. Robbins*, 551 U.S. 537, 561-62 (2007) (declining *Bivens* extension where recognition of proposed claim would have "invite[d] claims in every sphere of legitimate governmental action affecting property interests" and, thus, "an onslaught of *Bivens* actions"). These points underscore why "prescribing" a failure-to-intervene cause of action based on a failure to prevent the conduct of others is particularly "a job for Congress, not the courts." *Egbert*, 142 S. Ct. at 1800; *see id.* at 1803-04 (noting concerns about "the 'systemwide' consequences" of recognizing a new *Bivens* remedy). As *Egbert* recognized, the "factors" and "policy considerations" bearing on whether to create a cause of action "include 'economic and governmental concerns,' 'administrative costs,' and the 'impact on governmental operations systemwide.'" *Id.* at 1802-03; *cf. id.* at 1807 (declining to extend *Bivens* to First Amendment retaliation because "[a] plaintiff can turn practically any adverse action into grounds for a retaliation claim").

    c.    As explained, this Court decided *Silva* after the district court denied the defendants' motion to dismiss, but while their motion for reconsideration was pending. Defendants brought *Silva* to the court's attention before the court denied reconsideration. App. Vol. 2 at 311.

The district court cited *Silva* in discussing *Egbert*, *see* App. Vol. 2 at 317, but failed to address *Silva*'s holding that special factors and separation-of-powers concerns preclude extending *Bivens* remedies to Eighth Amendment excessive-force claims. *See supra* p. 13-14. As explained, that aspect of *Silva* is controlling here and requires the dismissal of Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims. *See also Silva*, 45 F.4th at 1136, 1140 (stating that one "lesson[] from *Egbert*" is that a *Bivens* expansion is not merely "disfavored" but "is impermissible in virtually all circumstances," and that the Supreme Court's "message could not be clearer—lower courts expand *Bivens* claims at their own peril") (quoting *Egbert*, 142 S. Ct. at 1803).

> **2.    Even Apart from *Silva*, the District Court's Refusal to Dismiss Mohamed's Eighth Amendment Excessive-Force and Failure-to-Intervene Claims Cannot Stand.**

Although *Silva* requires dismissal of Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims as a matter of Circuit precedent, those claims must be dismissed in any event under *Abbasi* and *Egbert*.

> **a.    Mohamed's Excessive-Force and Failure-to-Intervene Claims Present New *Bivens* Contexts.**

**i.    Excessive-Force Claim.** The district court concluded that there is no meaningful difference between an Eighth Amendment excessive-force claim and the deliberate indifference to medical needs claim recognized in *Carlson*. *See* App. Vol. 2 at 300-01, 315. That holding is wrong even apart from *Silva*.

*Abbasi* held that a case can involve a new *Bivens* context if the case involves a different legal mandate under which the officer was operating, *see* 582 U.S. at 140, and that is the case here. A medical-indifference claim requires proof of "serious medical needs," *Carlson*, 446 U.S. at 16 n.1, and typically turns on scientific and therapeutic judgments. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 32-36 (1993) (whether an inmate has a "serious medical need[]" is an objective question that can involve a "scientific and statistical inquiry" into the seriousness of the potential harm) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Eighth Amendment excessive-force claims require a fundamentally different analysis, turning on whether a prison official acted "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Abbasi* also held that a case can involve a new *Bivens* context if it presents "the risk of disruptive intrusion by the Judiciary into the functioning of other branches," 582 U.S. at 139-40. *Carlson* may not have presented that concern because an Eighth Amendment medical-indifference claim is limited to the context of serious medical needs. But because prisons involve the "'ever-present potential for violent confrontation and conflagration,'" *Whitley*, 475 U.S. at 321 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977)), the same is not true of Eighth Amendment excessive-force claims. Decisions regarding what level of force may be appropriate to protect institutional safety and security (including the safety and security of other inmates) can arise in *every* context in a federal correctional facility.

As a result, recognizing an Eighth Amendment excessive-force *Bivens* claim would have "'systemwide' consequences" for the proper management of federal prisons far beyond what *Carlson* entails with respect to medical treatment. *Egbert*, 142 S. Ct. at 1802-03; *see Tate v. Harmon*, 54 F.4th 839, 841, 846-48 (4th Cir. 2022) (no *Bivens* extension to inmate's "broad" and "systemic" Eighth Amendment challenge to "'degenerate' conditions of confinement" because that claim was "materially distinct" from *Carlson*'s "narrow and discrete" claim, and the court was "ill-suited to 'predict the systemwide consequences'" of "impos[ing] liability on prison officials on a systemic level, implicating the day-to-day operations of prisons, affecting the scope of the officials' responsibilities and duties, and implicating policy, administrative, and economic decisions"); *Mejia v. Miller*, 2023 WL 2350630 *5 (9th Cir. Mar. 2, 2023) (declining to recognize a *Bivens* excessive-force claim against Bureau of Land Management officials because of the systemwide consequences such a claim would have on those officials' ability to maintain control on federal lands).

The district court was unconvinced that providing a remedy for constitutionally excessive uses of force would interfere with BOP operations. *See* App. Vol. 2 at 330-31. *Egbert*, however, emphasized that *Bivens* "does not invite federal courts to independently assess the costs and benefits of implying a cause of action." 142 S. Ct. at 1805; *see also id.* at 1803-04 (noting that "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief.") (citation omitted).

19

Moreover, *Egbert* instructed that a court should not recognize a new *Bivens* remedy if there is even a "*potential*" for disruption of government operations, *id.* at 1805 (quoting *Abbasi*, 582 U.S. at 140, 140), and there is a least that much here.

In addition, *Egbert* "explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 140). That principle is applicable here because *Carlson* did not consider whether the other special factors addressed *infra* at pp. 23-30—including but not limited to the existence of the BOP's administrative remedy program—preclude extending a *Bivens* remedy to a new context.

**ii. Failure-to-Intervene Claim**. Relying on *Farmer v. Brennan*, 511 U.S. 825 (1994), the district court held that Mohamed's failure-to-intervene claim does not present a new *Bivens* context. Despite acknowledging that *Farmer* "did not explicitly recognize a new *Bivens* remedy," App. Vol. 2 at 303, the court declared it "unclear" whether *Farmer* had done so because *Farmer* addressed the standards governing the elements of a failure-to-protect claim in the context of a *Bivens* suit. *Id.* The district court resolved that purported ambiguity in Mohamed's favor because some other courts have concluded that *Farmer* did recognize a *Bivens* remedy in that context. *See id.*

The district court's reasoning cannot withstand scrutiny. The defendants in *Farmer* did not argue that a *Bivens* remedy was unavailable there based on special-factors concerns. Thus, the Supreme Court had no occasion to discuss, and in fact did not discuss, that issue—addressing instead only the substantive standard governing a

20

failure-to-protect claim. Accordingly, the fact that *Farmer* addressed the merits of a failure-to-protect claim in a *Bivens* case does not mean that *Farmer* extended *Bivens* to that context. *See, e.g., In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989) ("A point of law merely assumed in an opinion, not discussed, is not authoritative.") (citing, *e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 & n. 29 (1984)).

Moreover, the Supreme Court has time and again emphasized that it has recognized *Bivens* remedies in only three cases: *Bivens*, *Davis*, and *Carlson*. *See Egbert*, 142 S. Ct. at 1793; *Hernandez*, 140 S. Ct. at 741, 743-44; *Abbasi*, 582 U.S. at 140. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself," *Abbasi*, 582 U.S. at 140 (emphasis added). And courts applying *Abassi*'s new-context analysis "may consider only Supreme Court decisions approving *Bivens* actions"—*i.e.*, *Bivens*, *Davis*, and *Carlson. Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020); *accord Bulger v. Hurwitz*, 2023 WL 2335958, at *4-5 (4th Cir. Mar. 3, 2023); *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023).

*Farmer* did not make that list, and *Egbert* and *Abbasi* make clear that *Bivens* claims not recognized in *Bivens*, *Davis*, or *Carlson* must go through the analysis *Egbert* and *Abbasi* identify. *See Egbert*, 142 S. Ct. at 1803; *Abbasi*, 582 U.S. at 140; *see also Tate*, 54 F.4th at 847 (observing that, although *Farmer* "allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim). Moreover, the Supreme Court has never considered *Farmer* a *Bivens* case when cataloging *all* of its *Bivens* cases. *See Bulger*, 2023

WL 2335958 at 5 (rejecting plaintiff's "theory that *Farmer* recognized a fourth context of *Bivens* claims beyond the issues presented in *Bivens*, *Davis*, and *Carlson*," as "the parties" in *Farmer* "did not brief the issue" of remedy availability).

In addition, *Abbasi* itself confirms that an Eighth Amendment failure-to-intervene claim is a new *Bivens* context. *Abbasi* held that a Fifth Amendment prisoner-abuse claim presented a new *Bivens* context, even though that claim and a *Carlson* medical-treatment claim both require evaluating whether prison officials acted with "deliberate indifference"—a "significant parallel[]." 582 U.S. at 147. An Eighth-Amendment failure-to-intervene claim is another type of prisoner-abuse claim. Moreover, in two recent cases decided after *Egbert*, the Fourth Circuit has held that *Farmer* did *not* recognize a *Bivens* claim in that context. *See Bulger*, 2023 WL 2335958 at 5-6; *Tate*, 54 F.4th at 846-48. Those decisions are correct and more persuasive than two pre-*Egbert* Third Circuit decisions that reached the opposite result, *see Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021); *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018).

Mohamed's Eighth Amendment failure-to-intervene claim also differs from *Carlson* because *Carlson* recognized a *Bivens* claim for deliberate indifference to serious *medical* needs. As the Supreme Court explained in *Whitley*, a prison's responsibility to attend to prisoners' medical needs "does not ordinarily clash with other equally important government[] responsibilities" and does not typically involve "balancing competing institutional concerns for the safety of prison staff or . . . inmates." 475 U.S. at 320. Those concerns, by contrast, lay at the heart of both an Eighth Amendment

excessive-force and an Eighth Amendment failure-to-intervene claim. *See id.* at 318-322; *Farmer*, 511 U.S. at 832-840.

Finally, a failure-to-intervene claim also presents a new *Bivens* context because "the extent of judicial guidance" for such a claim, *Abbasi*, 582 U.S. at 140, is not as clear or developed as it is for medical-treatment claims. *See id.* at 146-50 (noting that the "standard for a claim alleging that a warden allowed guards to abuse pre-trial detainees is less clear under the [Supreme] Court's precedents" than the standard for inmate claims alleging failure to provide medical treatment); *see also supra* p. 15-16 (discussing the relative indeterminacy of a failure-to-intervene claim).

> **b.    Special Factors Preclude Extending *Bivens* Remedies to Eighth Amendment Excessive-Force and Failure-to-Intervene Claims.**

If a claim arises in a new *Bivens* context, a *Bivens* remedy is unavailable "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 136).

1.    Multiple special factors preclude recognizing a *Bivens* remedy for an Eighth Amendment excessive-force or failure-to-intervene claim. To begin, the BOP's administrative remedy program, which includes two levels of administrative appeals, *see* 28 C.F.R. §§ 542.10, .15, .16, .18, provides a sufficient reason to conclude that Congress would not approve of a *Bivens* remedy for an Eighth Amendment excessive-force or failure-to-intervene claim. *See Silva*, 45 F.4th at 1141 ("We therefore have little difficulty

concluding that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring'") (alteration in original) (quoting *Malesko*, 534 U.S. at 74); *see also Bulger*, 2023 WL 2335958 at 7; *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 at *1 (9th Cir. Oct. 11, 2022); *Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019).

The district court held that the BOP's administrative remedy program is irrelevant because whether an alternative remedy precludes a *Bivens* extension turns exclusively on congressional intent. *See* App. Vol. 2 at 324. That reasoning cannot be squared with *Egbert*, which held that recognizing a new *Bivens* remedy is inappropriate where "Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence." 142 S. Ct. at 1807 (emphasis added). Under *Egbert*, the special-factors analysis focuses on whether congressional *or administrative* processes preclude a *Bivens* extension. *See Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (an "alternative remedial structure" under *Abbasi* "can take many forms, including *administrative*, statutory, equitable, and state law remedies") (emphasis added).

The district court also held that the BOP's administrative remedy program does not preclude a *Bivens* extension because that program does not provide for the award of damages. App. Vol. 2 at 328-29. That reasoning conflicts with *Egbert's* sole focus on "*deterrence*," 142 S. Ct. at 1804 (emphasis added), which requires concluding that an alternative process need not include the potential for damages in order to preclude a

*Bivens* extension. *See id.* ("Nor does it matter that 'existing remedies do not provide complete relief.'"); *id.* at 1804, 1807 (a court should not augment congressional or administrative processes with a *Bivens* remedy "even if [it] independently concludes that the Government's procedures are 'not as effective as an individual damages remedy'") (citation omitted).

The district court also ran afoul of *Egbert* by faulting the BOP's administrative remedy program for not providing for "review outside the Bureau of Prisons." App. Vol. 2 at 328. As mentioned, *Egbert* noted that the BOP's administrative grievance program provides an adequate alternative remedy to a *Bivens* claim, and compared that program favorably to the internal agency process at issue in *Egbert*. *See* 142 S. Ct. at 1806 (citing *Malesko*, 534 U.S. at 71). The *Egbert* plaintiff was denied a *Bivens* remedy because (among other reasons) he "took advantage of" the Border Patrol's "grievance process," which, in the Court's view, "secured adequate deterrence and afforded [the plaintiff] an alternative remedy." *Id.* at 1806-07.

Significantly, *Egbert* so held notwithstanding the plaintiff's argument (similar to the district court's statement here) that the process is "inadequate" because it did not "entitle[] [him] to participate" and provided "no right to judicial review of an adverse determination." 142 S. Ct. at 1806. As *Egbert* noted, "[w]e have never held that a *Bivens* alternative must afford rights to participation or appeal." *Id.*; *see also Pettibone*, 59 F.4th at 456 (denying *Bivens* remedy for Fourth Amendment claim because "[a]ggrieved parties" in the plaintiff's position "can report any alleged misconduct to the Inspector

General of the Department of Homeland Security, who must either investigate or refer the matter to the Officer for Civil Rights and Civil Liberties").

Although the Court need not address this issue, multiple other alternative processes also preclude the *Bivens* extension Mohamed seeks. Those include the availability of injunctive relief and mandamus, *see Abbasi*, 582 U.S. at 143-44; *Simmat v. U.S. BOP*, 413 F.3d 1225, 1231 (10th Cir. 2005); habeas corpus relief, *see Abbasi*, 582 U.S. at 143-44; and a variety of other damages actions offering "significant . . . compensation," *Minneci*, 565 U.S. at 120. For example, to the extent sovereign immunity is waived and the relevant exhaustion requirements are met, an inmate can sue the United States under the Federal Tort Claims Act (FTCA). *See Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020); *Vanderklok v. United States*, 868 F.3d 189, 204 (3d Cir. 2017). Indeed, Mohamed has asserted FTCA claims here, some of which remain pending below. *See* App. Vol. 2 at 297-298, 309. Mohamed also could have brought state-law tort claims against any culpable federal employee acting outside the scope of his or her employment and, thus, outside the scope of the Westfall Act's protection. *See Oliva*, 973 F.3d at 443-44; *Vanderklok*, 868 F.3d at 204.

2.    The impact of an Eighth Amendment excessive-force or failure-to-intervene *Bivens* claim on institutional security also counsels against recognizing any such claim. "In making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike."

*Whitley*, 475 U.S. at 320. The "wide-ranging" deference prison administrators should be afforded regarding the use of force, *id.* at 321, also extends to "prophylactic or preventive measures intended to reduce . . . breaches of prison discipline," *id.* at 322. Subjecting prison officials to individual liability for an excessive-force or failure-to-intervene claim could interfere with prison security by causing officials to "refrain from taking urgent and lawful action." *Abbasi*, 582 U.S. at 145.

Moreover, *Egbert* emphasized that "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." 142 S. Ct. at 1803-04 (quoting *Abbasi*, 582 U.S. at 136). "That uncertainty alone," *Egbert* noted, "is a special factor that forecloses relief." *Id.* at 1804 (citing *Hernández v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (en banc) (stating that "[t]he newness of this 'new context' should alone require dismissal"). That principle bars extending *Bivens* to Mohamed's excessive-force and failure-to-intervene claims here, above and apart from the fact that recognizing a *Bivens* Eighth Amendment excessive-force or failure-to-intervene claim *is* likely to have adverse systemwide consequences for federal penal institutions. *See supra* p. 26. And for reasons already explained, the breadth, indeterminacy, and causation issues related to an Eighth Amendment failure-to-intervene claim (which render that kind of claim a new *Bivens* context, *see supra* pp. 15-16) also constitute additional special factors counseling against extending *Bivens* to that particular context.

3.       "[L]egislative action suggesting that Congress does not want a damages remedy" is another "factor counseling hesitation." *Abbasi*, 582 U.S. at 148. For nearly 40 years, Congress has evinced "frequent and intense" interest in the regulation of federal prisons and in the remedies available to federal prisoners. *See id.* at 144 (quoting *Schweicker v. Chilcky*, 487 U.S. 412, 425 (1988)). But although Congress long ago created a cause of action for damages against state officials for constitutional violations, *see* 42 U.S.C. § 1983, Congress has never created a parallel action against federal officials generally or BOP officials specifically. Congressional activity relating to federal prisoner issues shows this omission "might be more than mere oversight." *Abbasi*, 582 U.S. at 143.

In 1980, Congress enacted the Civil Rights of Institutionalized Persons Act (CRIPA), Pub. L. No. 96-247, 94 Stat. 349 (1980). CRIPA authorized the Attorney General to institute a civil action for "equitable relief" against state officials for unconstitutional behavior. *Id.* § 3(a), 94 Stat. at 350. CRIPA, however, expressly declined to authorize any private litigation for "parties other than the United States" to "enforce the legal rights which they may have pursuant to existing law," *id.* § 12, 94 Stat. at 354, and provided no cause of action for federal inmates.

In 1996, Congress returned to the field with the Prisoner Litigation Reform Act (PLRA), Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321-66 (1996), which imposed a new "mandatory" requirement that prisoners exhaust all "administrative remedies" before bringing an "action . . . with respect to prison conditions." *Porter v. Nussle*, 534 U.S. 516,

524-25 (2002) (alteration in original) (quoting 42 U.S.C. § 1997e(a)). Because this requirement applies both to actions brought against state officials under § 1983 and to actions brought under "any other Federal law," 42 U.S.C. § 1997e(a), the PLRA's exhaustion requirement extends to "federal prisoners suing under *Bivens*." *Porter*, 534 U.S. at 524. But as *Abbasi* noted, the PLRA—which arose from Congress's "specific . . . consider[ation]" of "the matter of prisoner abuse" and "the proper way to remedy those wrongs"—"itself does not provide for a standalone damages remedy against federal jailers."582 U.S. at 148-49. The PLRA thus suggests that Congress "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 149; *see Bulger*, 2023 WL 2335958 at 8 (no *Bivens* remedy for inmate where its allowance "would conflict with Congress's choice" to, *inter alia*, "'omit an individual-capacity damages remedy'" from PLRA).

Congress again declined to create an individual damages remedy in the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309. The Act sought to "protect the Eighth Amendment rights of . . . prisoners" and to "increase the accountability of prison officials." *Id.* § 30302(6), (7). However, the Act did not do so by creating a private right of action against BOP officials for failing to prevent the sexual abuse of inmates. Instead, the Act instructed the Attorney General to issue national regulations for preventing, investigating, and punishing prison rape. *Id.* § 30307(a)(1)-(3).

In 2013, Congress amended the PLRA's physical-injury prerequisite. *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1101(a), 127 Stat. 54, 139; *see also* 42 U.S.C. § 1997e(e). Despite the opportunity to expressly provide for *Bivens* remedies outside the *Carlson* context, Congress did not do so. Instead, it limited the PLRA amendments to specifying that sexual assault satisfies the injury requirement.

*\* \* \* \* \**

For all the above reasons, this Court should not recognize a *Bivens* remedy for Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims. This Court in *Silva* refused to recognize a *Bivens* excessive-force claim; *Silva*'s rationale applies to a failure-to-intervene claim, and the case law (including *Egbert*) requires dismissal even apart from *Silva*. Every court of appeals to have addressed the question after *Egbert* has refused to recognize a *Bivens* Eighth Amendment excessive-force or failure-to-intervene remedy. *See Mejia v. Miller*, 2023 WL 2350630 (9th Cir. Mar. 2, 2023); *Alsop v. Federal BOP*, No. 22-1933, 2022 WL 16734497 (3d Cir. Nov. 7, 2022) (per curiam); *Greene v. United States*, No. 21-5398, 2022 WL 13638916 (6th Cir. Sept. 13, 2022). This Court should rule similarly.

## II.    This Court Has Jurisdiction Over This Appeal Pursuant to The Collateral Order Doctrine.

A.      28 U.S.C. § 1291 provides courts of appeals with jurisdiction over "appeals from all final decisions of the district courts of the United States[] . . . except where a direct review may be had in the Supreme Court." Section 1291 "encompasses not only

judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949)). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995). The district court's refusal to dismiss Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims satisfies all three *Cohen* requirements.

The court's orders to that effect satisfy the first *Cohen* factor because if this Court declines to extend *Bivens* to Mohamed's claims, there will be nothing to do but dismiss them. *See Graber v. Doe*, 59 F.4th 603, 617 (3d Cir. 2023) (Hardiman, J., dissenting). In that respect, those orders are in no way "tentative, informal, or incomplete." *Swint*, 514 U.S. at 42 (quoting *Cohen*, 337 U.S. at 546).

Those orders also satisfy the second *Cohen* factor, which, as noted, turns on whether the question presented for interlocutory appeal is separate from the merits and important. Regarding the separateness inquiry, a court considering a proposed *Bivens* extension must decide whether (1) the context of the case at hand differs from the three contexts in which the Supreme Court has recognized *Bivens* claims, and (2) special factors preclude a *Bivens* extension.

Those considerations raise issues that are legally distinct—and thus *separate*—from the merits of Mohamed's Eighth Amendment excessive-force or failure-to-intervene claims. *See Graber,* 59 F.4th at 616 (Hardiman, J., dissenting). Indeed, the special-factors inquiry is more separate from the merits of a *Bivens* constitutional claim than a denial of qualified immunity, which is subject to collateral-order review under *Mitchell v. Forsyth*, 472 U.S. 511, 526-28 (1985). Unlike the special-factors inquiry, qualified immunity can and often does overlap significantly with the merits of a *Bivens* constitutional claim. An immunity appeal, for example, may focus on "whether the plaintiff has alleged the deprivation of a constitutional right *at all*," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (emphasis added), *see Pearson* v. *Callahan*, 555 U.S. 223, 232 (2009) (describing this as the "first step" of the qualified immunity analysis), which goes directly to the merits of or the elements underlying the constitutional-tort claim. Moreover, even if an immunity appeal focuses on whether the plaintiff has identified a violation of "clearly established law" (the second prong of the qualified immunity analysis), the appeal may still overlap with the merits because "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided isolation from the facts pleaded." *Iqbal*, 556 U.S. at 673. These points all confirm that an interlocutory appeal challenging a *Bivens* extension is even more separate from the merits than an immunity appeal, which as noted qualifies for immediate appeal under the collateral order doctrine. *See Graber*, 59 F.4th at 617 (Hardiman, J., dissenting).

Regarding importance, whether a *Bivens* remedy should be recognized qualifies because that question raises fundamental separation of powers concerns. *See Will v. Hallock,* 546 U.S. 345, 352-53 (2006) (noting that the separation of powers is a "value of high order" that provides "an interest in avoiding trial"). As the Supreme Court emphasized in *Abbasi*, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis." 582 U.S. at 135; *see also id.* at 133 (noting that "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation").

*Egbert* reiterated this key point, noting that "[a]t bottom, creating a cause of action is a legislative endeavor," 142 S. Ct. at 1802, and that Congress is "'far more competent than the Judiciary' to weigh" the "policy considerations" relevant to creating a cause of action, *id.* at 1803; *see also id.* at 1802 (noting that, since *Bivens*, *Davis*, and *Carlson*, "we have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power'") (citation omitted); *Graber*, 59 F.4th at 615 (Hardiman, J., dissenting) (concluding that the separation of powers is "an imperative worthy of immediate enforcement").

Whether special factors bar Mohamed's Eighth Amendment excessive-force and failure-to-intervene *Bivens* claims also is important enough to merit an interlocutory appeal because allowing him to proceed on those claims risks undermining "the

efficiency of government and the initiative of its officials." *Will*, 546 U.S. at 352. Similar to orders denying qualified immunity (which as noted are immediately appealable under the collateral order doctrine), orders extending non-statutory *Bivens* remedies impose "time and administrative costs . . . resulting from the discovery and trial process," *Abbasi*, 582 U.S. at 13, and can impair government functioning, interfere with executive autonomy, and chill high-level policy making, *id.* at 141-42. The central role those concerns play in determining whether to extend a new *Bivens* remedy is no less significant and no less worthy of collateral-order review. *See Graber*, 59 F.4th at 616 (Hardiman, J., dissenting) ("Expansion of *Bivens* in violation of the separation of powers thus disrupts effective governance, subjecting officers to the same 'distraction from duty' that qualified immunity is meant to foreclose") (citing *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994)). Moreover, as Judge Hardiman recently pointed out in his *Graber* dissent, orders refusing to dismiss *Bivens* claims based on special factors are arguably even more important than other orders that are immediately appealable, including "orders rejecting the applicability of security laws enacted after the initiation of derivative shareholder suits." 59 F. 4th at 612 (citing *Cohen*, 337 U.S. at 546-47).

The third *Cohen* factor is satisfied here because the district court's extension of non-statutory *Bivens* remedies would be effectively unreviewable on appeal from final judgment. As noted, "[r]ecognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation

will unduly inhibit officials in the discharge of their duties." *Egbert*, 142 S. Ct. at 1807 (quotation marks omitted). These costs arise the moment a federal official is required to respond to a *Bivens* claim, and are not cured by a final judgment in a *Bivens* defendant's favor. *Cf. Mitchell,* 472 U.S. at 526-28 (noting that the same concerns support treating the denial of qualified immunity as an immediately appealable collateral order). The "'time and administrative costs' run up by the discovery and trial process," *Graber*, 59 F.3d at 614 (Hardiman, J., dissenting) (quoting *Abbasi*, 137 S. Ct. at 1843, 1856), also impose substantial burdens on the courts.

In addition, "[r]ecognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers." *Egbert*, 142 S. Ct. at 1807 n.3. That stress occurs whenever a district court, including in an interlocutory order, extends *Bivens* to a new context. Even a "threatened breach" of the separation powers warrants "special solicitude" in the form of an immediate appeal. *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982).

Consistent with the above principles, the Supreme Court addressed whether special factors preclude a *Bivens* extension on an interlocutory appeal *without* considering the issue of qualified immunity in *Wilkie*, 551 U.S. at 549 n.4, and again in *Hernandez*, 140 S. Ct. at 740-41. Given the Court's aversion to theories of "pendent appellate jurisdiction," *Swint*, 514 U.S. at 43, the Court is best understood as having considered the remedy-extension orders in *Hernandez* and *Wilkie* as immediately appealable collateral orders in their own right.

B.     This Court has not yet decided whether the collateral order doctrine applies to a district court's decision to extend a non-statutory *Bivens* remedy.  Two courts of appeals have held that the collateral order doctrine does not apply in this context. *See Himmelreich v. Federal BOP*, 5 F.4th 653 (6th Cir. 2021); *Graber*, 59 F.4th 603 (3d Cir. 2023).  For multiple reasons—including those explained by Judge Hardiman in his *Graber* dissent—the reasoning of those decisions is flawed.

In *Himmelreich*, the Sixth Circuit held that an order refusing to dismiss a *Bivens* claim on special-factors grounds is not an appealable collateral order because *Bivens* "does not grant [the] defendants an entitlement not to stand trial" and "qualified immunity more than adequately protects government officials from the burdens of litigation." 5 F.4th at 662. Both assertions are incorrect. As explained, the *Bivens* special-factors analysis is grounded on harms that can only be avoided by dismissal at the earliest appropriate stage of litigation, rather than having to await a trial. Moreover, the fact that *Bivens* defendants may potentially be entitled to qualified immunity is not a reason to exclude *Bivens* extension orders from the collateral order doctrine. Despite the potential for qualified immunity, "[t]he risk of personal damages liability" and the associated burdens of litigation may "cause an official to second-guess difficult but necessary decisions." *Abbasi*, 582 U.S. at 142. And the separation-of-powers "limitation" on recognizing a new *Bivens* claim would likewise be "hollow if it does nothing but duplicate pre-existing immunity from suit." *Stanley*, 483 U.S. at 686.

36

*Himmelreich* also stated that, "[t]aken to its logical conclusion," applying the collateral order doctrine to a *Bivens* extension order "would permit interlocutory appeal of every order denying a motion for summary judgment on a legal issue," 5 F.4th at 662. That statement is unpersuasive. Many other potential legal arguments for why a *Bivens* claim may fail to state a claim, such as the lack of personal jurisdiction or venue, among others, do not raise the separation-of-powers concerns that are implicated by orders extending non-statutory *Bivens* remedies to new contexts.

Finally, the Sixth Circuit wrongly concluded that the government's position on this issue would contravene *Will*, which held that an order refusing to dismiss a *Bivens* suit based on the FTCA's judgment bar is not an immediately appealable collateral order. *See* 546 U.S. at 355. *Will* is inapposite because the FTCA's judgment bar—unlike the Bivens special-factors analysis—is not designed to preserve federal officials' willingness to exercise initiative. *See id.* at 353. Moreover, *Will* recognized that "honoring the separation of powers" is a "value of a high order" that can be "marshaled in support of" an immediately appealable "interest in avoiding trial," *id.* at 352, and as explained, the *Bivens* special-factors analysis rests on separation-of-powers concerns. *Himmelreich*'s reading of *Will* also cannot be squared with the Supreme Court's decision to address the *Bivens* special-factors issue on interlocutory appeals in *Hernandez* and *Wilkie*. *See supra* p. 35; *see also Graber*, 59 F. 4th at 612 (Hardiman, J., dissenting).

In *Graber*, a divided Third Circuit panel followed *Himmelreich*, *see Graber*, 59 F.4th at 610, with the majority declaring that questions of *Bivens* remedy-availability merely concern "whether the plaintiff has stated a claim upon which relief may be granted, which is the type of ruling regularly reviewed after the entry of final judgment," *id.* at 609 n.11. As Judge Hardiman explained in dissent, however, the special-factors issue differs from other potential merits defenses because the special-factors inquiry centers on separation-of-powers concerns. *See id.* at 612-16 (Hardiman, J., dissenting). That concern "is an imperative worthy of immediate enforcement," *id.* at 615-16 (Hardiman, J., dissenting) (citing, *e.g.*, *Sell v. United States*, 539 U.S. 166, 176 (2003)), and "cannot be undone even if the officer is acquitted," *id.* at 616 (Hardiman, J., dissenting) (noting that "[e]xpansion of *Bivens* in violation of the separation of powers . . . disrupts effective governance, subjecting officers to the same 'distraction from duty' that qualified immunity is meant to foreclose") (quoting *Digital Equip. Corp.,* 511 U.S. at 881).

The *Graber* majority also misinterpreted *Will*'s statement that the collateral order doctrine should not be applicable "'*whenever*'" a *Bivens* defendant loses "'a motion to dismiss.'" 59 F.4th at 609 (emphasis added) (quoting *Will*, 546 U.S. at 353-54). As Judge Hardiman correctly explained, *see Graber*, 59 F.3d at 612 (Hardiman, J., dissenting), neither that statement nor anything else in *Will* supports the majority's conclusion that "a *Bivens* ruling is different from an immunity ruling and is not eligible for interlocutory appeal under the collateral order doctrine." *Graber*, 59 F.4th at 609. As already noted, giving "*Cohen* treatment" to *Bivens* extension orders, *Will*, 546 U.S. at 352, would not

require the same result for all orders declining to dismiss *Bivens* claims on other grounds. And "at most," the statement from *Will* on which the *Graber* majority relied would constitute non-binding "drive by dictum about *Bivens*." *Graber*, 59 F.4th at 612 (Hardiman, J., dissenting).

The *Graber* majority further erred by refusing to treat *Bivens*-extension orders as immediately appealable because those orders do not involve "an immunity doctrine." 59 F.4th at 609-10. As Judge Hardiman explained, "an immunity is neither sufficient nor necessary for an order denying a claim to be 'effectively unreviewable on appeal,'" and "we have recognized collateral orders that do not involve immunity defenses at all, much less immunity from suit." *Id.* at 611 (Hardiman, J., dissenting). Courts "do recognize new collateral orders," *id.* at 613 (Hardiman, J., dissenting), and the Supreme Court did so just last Term in *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), applying *Cohen* collateral order doctrine to prisoner-transport orders. *See id.* at 2043 n.1.

The *Graber* majority also wrongly declined to treat *Bivens*-extension orders as immediately appealable on the ground that the argument that a court should not imply a *Bivens* remedy is "simply a defense to liability." 59 F.4th at 609-10. The *Graber* majority failed to appreciate that qualified immunity also is a defense to liability. Indeed, as noted, a claim of qualified immunity is arguably more clearly a defense to liability than a contention that no cause of action exists, since the latter issue in no way turns on the lawfulness of the challenged conduct.

Finally, even though qualified immunity protects government officials from suit and liability unless a plaintiff pleads facts showing that the right was "clearly established," *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)), that is no reason to decline collateral-order review of an order extending *Bivens* to a new context. *Cf. Graber*, 59 F.3d at 609. The judicially created *Bivens* remedy has never extended beyond violations of clearly established rights, and as noted, the special-factors inquiry furthers the same goal as the clearly-established law requirement, "which is to avoid trial, while also 'honoring the separation of powers,' 'preserving the efficiency of government,' and encouraging 'the initiative of its officials.'" *Id.* (quoting *Will*, 546 U.S. at 352).

## Conclusion

Plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims should be dismissed for lack of an available *Bivens* remedy.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*
COLE FINEGAN
  *United States Attorney*
BARBARA L. HERWIG
s/Lowell V. Sturgill Jr.
LOWELL V. STURGILL JR.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves important legal questions regarding whether the district court properly extended a *Bivens* individual-capacity remedy against several Bureau of Prisons employees for alleged Eighth Amendment excessive-force and failure-to-intervene claims. Defendants-Appellants believe oral argument would aid the Court in considering this appeal.

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P.

32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally

spaced font.

I further certify that this brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7)(B) because it contains 10,224 words, excluding the parts of the brief

exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
Counsel for Appellants

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that (1) all required privacy redactions have been made; (2) any required paper copies to be submitted to the court are exact copies of the version filed electronically; and (3) that the electronic submission was scanned for viruses and found to be virus-free.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. The brief will be served on the plaintiff, who is proceeding pro se, by hand.

I further certify that I will cause seven paper copies to be delivered to the Court by Federal Express within seven business days of notice that the Court has accepted the brief for filing.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
Counsel for Appellee