No. 22-1453

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

KHALFAN KHAMIS MOHAMED, *et al.*,

Plaintiff-Appellee,

v.

JONES, *et al.*,

Defendants-Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

The Honorable R. Brooke Jackson, United States District Judge
Civil No. 1:20-cv-2516

**REPLY BRIEF**

BRIAN M. BOYNTON
 *Acting Assistant Attorney General*
COLE FINEGAN
 *United States Attorney*
BARBARA L. HERWIG
 (202) 514-5425
LOWELL V. STURGILL JR.
 (202) 514-3427
 *Attorneys, Civil Division*
 *Appellate Staff, Room 7527*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, N.W.*
 *Washington, D.C. 20530*

***ORAL ARGUMENT REQUESTED***

# TABLE OF CONTENTS

GLOSSARY

INTRODUCTION.................................................................................................1

ARGUMENT .......................................................................................................2

I.    Mohamed's Eighth Amendment Excessive-Force and Failure-to-Intervene Claims Should Be Dismissed Because Special Factors Counsel Against Extending a *Bivens* Remedy to Those New Contexts ............................................................................................2

  A. This Court's Decision in *Silva* Bars Mohamed's *Bivens* Excessive-Force and Failure-to-Intervene Claims ...........................................2

    1. *Silva* Bars Mohamed's Excessive-Force Claims ............................2

    2. *Silva's* Reasoning Also Bars Recognizing a *Bivens* Eighth Amendment Failure-to-Intervene Claim.......................................8

  B. Even Apart from *Silva*, This Court Should Decline to Extend *Bivens* to an Eighth Amendment Excessive-Force or Failure-to-Intervene Claim.................................................................................11

    1. Excessive-Force Claims .................................................................11

    2. Failure-to-Intervene Claims..........................................................15

II.   This Court Has Jurisdiction Over This Appeal Pursuant to the Collateral Order Doctrine ..................................................................16

Conclusion...........................................................................................................23

Certificate of Compliance

Certificate of Digital Submission

Certificate of Service

i

Addenda:

1.    Order On Motion for Summary Judgment, *Smith v. Trujillo*, No. 1:20-cv-00877 (D. Colo. Apr. 27, 2023), Dkt. No. 209.

2.    Department of Justice, Office of the Inspector General, Management Advisory Memorandum 23-001, *Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in Investigations of Alleged Misconduct by BOP Employees* (Oct. 2022)

3.    U.S. Department of Justice, Federal Bureau of Prisons, Office of Internal Affairs Report for Fiscal Year 2020

4.    *With "Fox in Charge of the Henhouse," Almost All Misconduct Accusations Against BOP Staff Result in No Discipline*, Prison Legal News (Mar. 2023)

# TABLE OF AUTHORITIES

**Cases:**

*Abdo v. Balsick,*
    No. 18-cv-01622, 2019 WL 6726230 (D. Colo. Dec. 11, 2019) ...............................6

*Anderson v. Creighton,*
    483 U.S. 635 (1987)................................................................................2, 13, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................16

*Behrens v. Pelletier,*
    516 U.S. 299 (1996)................................................................................16

*Big Cats of Serenity Springs, Inc. v. Rhodes,*
    843 F.3d 853 (10th Cir. 2016) ....................................................................22

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971)................................................................... 1, 6, 7-23

*Booth v. Churner,*
    532 U.S. 731 (2001)................................................................................6

*Bowman v. Sawyer,*
    No. 19-cv-01411, 2020 WL 7249089 (D. Colo. Aug. 31, 2020),
    *report and recommendation adopted,* 2020 WL 6390992
    (D. Colo. Nov. 2, 2020)...........................................................................6

*Bush v. Lucas,*
    462 U.S. 367 (1983)............................................................................ 5, 18

*Callahan v. Federal BOP,*
    965 F.3d 520 (6th Cir. 2020).....................................................................5

*Carlson v. Green,*
    446 U.S. 14 (1980)...........................................................3, 8, 11, 12, 13, 15

*Christopher v. Harbury,*
    536 U.S. 403 (2002)................................................................................7

*Correctional Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ................................................................................18

*DeVargas v. Mason & Hanger-Silas Mason Co.*,
    844 F.2d 714 (10th Cir. 1998) ..........................................................21

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*,
    401 F.3d 143 (3d Cir. 2005) ..............................................................21

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) ...............................1, 2, 4, 5, 6, 11, 12, 13, 14, 18, 19

*Elhady v. Unidentified CBP Agents*,
    18 F.4th 880 (6th Cir. 2021) ............................................................17

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ..............................................................3, 8, 9

*Federal Deposit Ins. Corp. v. Meyer*,
    510 U.S. 471 (1994) ................................................................18

*Frew v. Young*,
    992 F.3d 391 (5th Cir. 2021) ............................................................21

*Garrett v. Hawk*,
    127 F.3d 1263 (10th Cir. 1997),
    abrogated on other grounds, *Booth*
    *v. Churner*, 532 U.S. 731 (2001) ......................................................5

*Garrett v. Stratman*,
    254 F.3d 946 (10th Cir. 2001) ...........................................................9

*Graber v. Doe II*,
    59 F.4th 603 (3d Cir. 2023) .........................................................17, 21

*Hernández v. Mesa*,
    140 S. Ct. 735 (2020) ............................................................4, 11, 17

*Hudson v. McMillian*,
    503 U.S. 1 (1992) ..................................................................8

*Johnson v. Jones*,
  515 U.S. 304 (1995)..................................................................................23

*Kell v. Benzon*,
  925 F.3d 448 (10th Cir. 2019) ...............................................................22

*Lovett v. Ruda*,
  No. 17-cv-02010, 2018 WL 4659111 (D. Colo. Sept. 28, 2018)............6-7

*Mack v. Yost*,
  968 F.3d 311 (3d Cir. 2020) .....................................................................6

*Mays v. Smith*,
  No. 20-7540, 2023 WL 3829596 (4th Cir. June 6, 2023) ......................8-9

*McCarthy v. Madigan*,
  503 U.S. 140 (1992)....................................................................................5

*Minneci v. Pollard*,
  565 U.S. 118 (2012) ............................................................................9, 18

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)...........................................................................17, 19

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)...........................................................................16, 23

*In re Motor Fuel Temperature Sales Practices Litig.*,
  641 F.3d 470 (10th Cir. 2011) ...............................................................22

*Nestlé USA, Inc. v. Doe*,
  141 S. Ct. 1931 (2021) ...............................................................................2

*Porter v. Nussle*,
  534 U.S. 516 (2002)............................................................................7, 10

*Ross v. Blake*,
  578 U.S. 632 (2016)...............................................................................5, 6

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988)..................................................................................18

*Securities & Exch. Comm'n v. Capital Consultants LLC,*
    453 F.3d 1166 (9th Cir. 2006) .......................................................................21

*Silva v. United States,*
    45 F.4th 1134 (10th Cir. 2022) .................................................... 1, 2, 3, 4, 5, 8, 11, 14

*Simmat v. U.S. BOP,*
    413 F.3d 1225 (10th Cir. 2005) .......................................................................9

*Smith v. Trujillo,*
    No. 1:20-cv-00877 (D. Colo. Apr. 27, 2023) .................................................3

*Smith v. United States,*
    561 F.3d 1090 (10th Cir. 2009) .......................................................................9

*Susinka v. Trujillo,*
    No. 21-cv-01837, 2023 WL 2366730 (D. Colo. Mar. 6, 2023)....................................3

*Swint v. Chambers Cty. Comm'n,*
    514 U.S. 35 (1995)........................................................................16

*Tucker v. Faith Bible Chapel International,*
    36 F.4th 1021 (10th Cir 2022) .......................................................................22

*United States v. Stanley,*
    483 U.S. 669 (1987).................................................................. 4, 6, 20

*Vega v. United States,*
    881 F.3d 1146 (9th Cir. 2018) .......................................................................6

*Wilkie v. Robbins,*
    551 U.S. 537 (2007)........................................................................18

*Will v. Hallock,*
    546 U.S. 345 (2006)........................................................................ 18, 19

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) .......................................................... 1, 10, 11, 12, 13, 18, 19

**Constitution:**

U.S. Constitution:

First Amendment ................................................................... 7, 22
Fourth Amendment ................................................................12
Eighth Amendment ....................................... 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 15, 16, 19

**Statutes:**

Federal Magistrates Act:

28 U.S.C. § 636 ........................................................................7

28 U.S.C. § 1291 ....................................................................16
28 U.S.C. § 1292(b) ...............................................................20
28 U.S.C. § 2676 ...................................................................19
42 U.S.C. § 1997e ...................................................................5
42 U.S.C. § 1997e(a) ...............................................................5

**Rules**:

Federal Rule of Civil Procedure 54(b) ..............................................21

**Miscellaneous**:

Department of Justice, Office of the Inspector General, Management
    Advisory Memorandum 23-001 (Oct. 2022) ...............................................15

## Glossary

BOP        Bureau of Prisons

FTCA      Federal Tort Claims Act

OIA        Office of Internal Affairs

PLRA      Prisoner Litigation Reform Act

## INTRODUCTION

In *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), this Court held that the Bureau of Prisons' (BOP) administrative remedy program precludes extending a *Bivens* individual-capacity damages remedy to an Eighth Amendment excessive-force claim. As our opening brief explained, *Silva* directly bars Mohamed's Eighth Amendment excessive-force claims and *Silva*'s reasoning also bars Mohamed's Eighth Amendment failure-to-intervene claims. Mohamed attempts to distinguish *Silva* on its facts, but his arguments are unfounded and have no basis in the Court's opinion.

Mohamed's claims also fail even apart from *Silva*. Eighth Amendment excessive-force and failure-to-intervene claims both involve different legal mandates and fundamentally different challenged conduct than the three claims for which the Supreme Court has authorized *Bivens* remedies. Mohamed's claims also would implicate far greater risks of disrupting the operation of prisons than any currently recognized *Bivens* claim. For those reasons and others, both of those claims present new *Bivens* contexts under *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and special factors preclude extending a *Bivens* remedy to either context. *Egbert* reaffirmed that the BOP's administrative remedy process, which was available to Mohamed, bars recognizing a new *Bivens* claim, *see id.* at 1806, and multiple other special factors—including, *e.g.*, the availability of injunctive and other damages actions—also bar extending *Bivens* to an Eighth Amendment excessive-force or failure-to-intervene claim.

This Court has jurisdiction under the collateral order doctrine. Like interlocutory orders denying qualified immunity, which are immediately appealable, orders extending *Bivens* remedies to new contexts entail "substantial social costs," including "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 142 S. Ct. at 1807 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Those harms are not cured by a final judgment in a *Bivens* defendant's favor. In addition, recognizing a *Bivens* cause of action is separate from merits and important enough to merit an interlocutory appeal because it "places great stress on the separation of powers." *Id.* at 1806 n.3 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1938 (2021) (plurality opinion)).

## ARGUMENT

I.  **Mohamed's Eighth Amendment Excessive-Force and Failure-to-Intervene Claims Should Be Dismissed Because Special Factors Counsel Against Extending a *Bivens* Remedy to Those New Contexts.**

A.  **This Court's Decision in *Silva* Bars Mohamed's *Bivens* Excessive-Force and Failure-to-Intervene Claims.**

1.  ***Silva* Bars Mohamed's Excessive-Force Claims.**

In *Silva v. United States*, this Court held that an Eighth Amendment excessive-force claim presents a new *Bivens* context and that the BOP's administrative remedy program precludes extending *Bivens* to that context. *See* 45 F.4th 1134, 1137-41 (10th

2

Cir. 2022). As our opening brief (at 13-15) explained, *Silva* directly bars Mohamed's Eighth Amendment excessive-force claims.[1]

Mohamed contends (Br. 8, 35) that *Silva* is inapposite because *Silva* involved only one claim against only one defendant whereas he asserts multiple claims against a group of defendants. Nothing in *Silva* supports that understanding of this Court's ruling. To the contrary, *Silva* broadly concluded that an Eighth Amendment excessive-force claim "clearly" constitutes a new *Bivens* context, 45 F.4th at 1137; that BOP's administrative remedy program "offers an independently sufficient ground" barring that new claim, *id.* at 1141; and that expanding *Bivens* is "impermissible in virtually all circumstances," *id.* at 1140. Given the breadth of that reasoning and the absence of any reliance on the particular facts presented, *Silva* is properly understood as categorically declining a *Bivens* extension to any Eighth Amendment excessive-force claim.

For similar reasons, the fact that both *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994), involved multiple claims and defendants, *see* Appellee's Br. 35, also is immaterial. Nothing in *Carlson* or *Farmer* suggests that creating a *Bivens* remedy turns on the number of claims filed or defendants sued, and neither of

---

[1] In a recent decision, the same district judge assigned to this case held that, under *Silva*, an Eighth Amendment excessive-force claim is a new *Bivens* context and the BOP's administrative remedy program is an "'adequate "means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring."'" Order on Motion for Summary Judgment at 6, 9, *Smith v. Trujillo*, No. 1:20-cv-00877 (D. Colo. Apr. 27, 2023), Dkt. No. 209 (alteration in original); *see also Susinka v. Trujillo*, No. 21-cv-01837, 2023 WL 2366730, at *5-6 (D. Colo. Mar. 6, 2023) (refusing to extend *Bivens* remedy to excessive-force claim based on *Silva*).

those considerations is even conceivably relevant to whether a claim presents a new *Bivens* context and is foreclosed by special factors (such as BOP's administrative remedy program).

Mohamed's contention (Br. 35) that his injuries were more severe than those alleged in *Silva* is immaterial for similar reasons. *Silva* in no way turned on the relative severity of the plaintiff's alleged injuries, and that consideration also has no imaginable bearing on whether a court should extend a *Bivens* remedy to an Eighth Amendment excessive-force claim. *Egbert v. Boule*, for example, emphatically rejected the *Egbert* plaintiff's argument that he "had a weightier interest in *Bivens* relief than the parents of the deceased Mexican teenager in *Hern*[*a*]*ndez*[ *v. Mesa*, 140 S. Ct. 735 (2020)]." 142 S. Ct. 1793, 1805 (2022). As *Egbert* explained, "[t]he *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action" and should not be applied "at such a narrow" or "too granular" "leve[l] of generality." *Id.* at 1805-06 (second alteration in original) (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).

*Egbert* likewise forecloses Mohamed's argument (Br. 42-44) that the BOP's administrative remedy program is inadequate to deter prison officials from harming him. *Egbert* held that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." 142 S. Ct. at 1807. "That is true even if a court independently concludes that the Government's

procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Mohamed contends (Br. 33) that these principles are inapplicable here because *Congress* has not determined that the BOP's administrative remedy program provides adequate deterrence to preclude a *Bivens* extension. As noted, however, *Egbert* held that a court may not extend *Bivens* to a new context where Congress "or the Executive" has created a process that it finds sufficient to secure an adequate level of deterrence. 142 S. Ct. at 1807; *accord Silva*, 45 F.4th at 1140; *Callahan v. Federal BOP*, 965 F.3d 520, 524 (6th Cir. 2020). Moreover, Congress was aware of the BOP's administrative remedy program when it amended 42 U.S.C. § 1997e(a) to require inmates to exhaust "whatever administrative remedies may be available," *see McCarthy v. Madigan*, 503 U.S. 140, 142 (1992), and enacted that amendment specifically to render that exhaustion requirement applicable to BOP inmates, *see, e.g., Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir. 1997), *abrogated on other grounds*, *Booth v. Churner*, 532 U.S. 731, 735 (2001). In addition, in *Silva*, this Court endorsed BOP's argument that "the BOP Administrative Remedy Program qualifies as an adequate alternative remedy for [the p]laintiff's claim." 45 F.4th at 1141. That endorsement satisfies *Egbert* in all respects.

*Ross v. Blake*, 578 U.S. 632 (2016), on which Mohamed relies (Br. 42-43), is plainly inapposite. *Ross* concerned the Prison Litigation Reform Act's (PLRA) requirement that inmates exhaust "such administrative remedies as are available" before bringing a civil action to challenge prison conditions. 42 U.S.C. § 1997e. *Ross* held that an administrative

remedy is considered "available" in that respect if it is "capable of use" to obtain "some relief for the action complained of." 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). In the *Bivens* context, however, whether an alternate remedy is adequate must be left to "Congress or the Executive." *Egbert*, 142 S. Ct. at 1807. *Ross* involved no such principle, as determining whether an administrative remedy process is available to an inmate for purposes of applying the PLRA's exhaustion requirement does not require courts to perform what is, "[a]t bottom, . . . a legislative endeavor," *id.* at 1802.

In any event, the BOP's administrative remedy process was available to Mohamed, and he invoked—and fully exhausted—that process. Mohamed contends (Br. 43) that process is a "dead end" because the BOP denied his administrative remedy requests here, but it is "irrelevant" to the special-factors analysis whether an alternative remedy process affords "an 'adequate' federal remedy" in any particular case. *Stanley*, 483 U.S. at 683; *see Mack v. Yost*, 968 F.3d 311, 320 n.8 (3d Cir. 2020) ("The fact that Mack was unsuccessful in obtaining relief through this program 'does not mean that he did not have access to alternative or meaningful remedies.'" (quoting *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018)); *see also Bowman v. Sawyer*, No. 19-cv-01411, 2020 WL 7249089, at *7 (D. Colo. Aug. 31, 2020), *report and recommendation adopted*, 2020 WL 6390992, *5 (D. Colo. Nov. 2, 2020); *Abdo v. Balsick*, No. 18-cv-01622, 2019 WL 6726230, at *7 (D. Colo. Dec. 11, 2019). The same principle also renders Mohamed's contention that he has unsuccessfully submitted numerous prior requests irrelevant for

present purposes. *See Lovett v. Ruda*, No. 17-cv-02010, 2018 WL 4659111, at \*9 (D. Colo. Sept. 28, 2018) ("The *Bivens* analysis appears to focus on the adequacy of remedies in the abstract rather than on a particular plaintiff's track record in pursuing relief."). Neither should the Court assume that any of Mohamed's prior complaints against BOP officials were well founded.

The Federal Magistrates Act, 28 U.S.C. § 636, and the two Supreme Court cases discussing that Act on which Mohamed relies, *see* Br. 34, also have no relevance here. That Act "authoriz[es] district judges to refer to magistrate judges, *inter alia*, 'prisoner petitions challenging conditions of confinement.'" *Porter v. Nussle*, 534 U.S. 516, 526 (2002). In *Porter*, the Supreme Court held that the Federal Magistrates Act allows the nonconsensual referral of all prisoner petitions to a magistrate judge. None of that has any bearing on whether this Court should extend *Bivens* as Mohamed requests here.

Mohamed's passing suggestion (Br. 34) that refusing to extend *Bivens* here would deny him access to the courts also lacks merit. As our opening brief (at 26) explained, Mohamed has access to the courts to seek injunctive relief and mandamus, habeas corpus relief, and a variety of other damages actions. Moreover, the Supreme Court's jurisprudence concerning the First Amendment right of access to the courts, *see*, *e.g.*, *Christopher v. Harbury*, 536 U.S. 403 (2002), does not guarantee a non-statutory, individual-capacity *damages* remedy to anyone claiming a constitutional violation.

### 2.    *Silva*'s Reasoning Also Bars Recognizing a *Bivens* Eighth Amendment Failure-to-Intervene Claim.

As our opening brief (at 15-16) demonstrated, *Silva*'s reasoning also bars Mohamed's Eighth Amendment failure-to-intervene claims. Those claims, like an Eighth Amendment excessive-force claim, flow from the "settled rule that '"the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment."'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (alteration in original). Moreover, both types of claims differ in multiple respects from an Eighth Amendment medical-treatment claim, for which *Carlson* recognized a *Bivens* remedy. *See* Appellants' Br. 15-16 (discussing that point). Accordingly, an Eighth Amendment failure-to-intervene claim presents a new *Bivens* context for reasons like those discussed in *Silva*.

In addition, *Silva*'s holding that the BOP's administrative remedy program precludes a *Bivens* extension, *see supra* p. 2, also applies to an Eighth Amendment failure-to-intervene claim. Indeed, a failure-to-intervene claim could adversely affect the operation of federal prisons—and the Constitution's separation of powers—on an even far more wide-ranging basis than an excessive-force claim. *See* Appellants' Br. 15.

Mohamed contends (Br. 36-37) that the Supreme Court extended a *Bivens* remedy to an Eighth Amendment failure-to-protect claim in *Farmer v. Brennan*, 511 U.S. 825, but that is not so. As our opening brief (at 20-23) explained, *Farmer* did not address, much less resolve, that issue, and the Supreme Court has never included *Farmer* in the short list of claims for which the Court, in a prior era, recognized *Bivens* claims. *See, e.g.*, *Mays*

*v. Smith*, No. 20-7540, 2023 WL 3829596, at \*4 (4th Cir. June 6, 2023) (holding that *Farmer* did not recognize a *Bivens* failure-to-protect damages remedy).

Moreover, while Mohamed correctly notes (Br. 37) that the Supreme Court cited *Farmer* in *Minneci v. Pollard*, 565 U.S. 118 (2012), the Court did so only for the proposition that "to show an Eighth Amendment violation a prisoner must typically show that a defendant acted, not just negligently, but with 'deliberate indifference,'" *id.* at 130 (quoting *Farmer*, 511 U.S. at 834). *Minneci* did not extend *Bivens* to an Eighth Amendment failure-to-intervene claim merely by discussing the elements of that claim, any more than the Supreme Court did in *Farmer.* That same point also applies to two Tenth Circuit cases Mohamed (Br. 37) cites, *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009); *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001).

*Simmat v. U.S. BOP*, 413 F.3d 1225 (10th Cir. 2005), which Mohamed (Br. 37) also cites, was an official-capacity damages action against the United States, not a *Bivens* suit. In dicta, *Simmat* quoted *Farmer* for the proposition that the courts can "'grant appropriate relief' on a federal prisoner's Eighth Amendment claim for damages and injunctive relief against prison officials in their individual and official capacities." 413 F.3d at 1228 (quoting *Farmer*, 511 U.S. at 846). Significantly, however, *Farmer* actually stated, in relevant part, that "[i]f the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate *injunctive* relief." *Farmer*, 511 U.S. at 846 (emphasis added). Moreover, as our opening brief (at 21) noted, lower-

court rulings decided prior to *Abbasi* are no longer binding or persuasive post-*Abbasi* on whether a *Bivens* remedy should be extended to a new context.

*Porter v. Nussle*, 534 U.S. 516, on which Mohamed relies (Br. 32, 34), is consistent with the proposition that *Farmer* did not recognize a *Bivens* failure-to-intervene claim. Relying on *Farmer*'s holding that a conditions of confinement claim is governed by a higher standard of proof ("significant" injury) than an excessive-force claim, the plaintiff in *Porter* argued that the PLRA's exhaustion requirement does not apply to excessive-force claims. *See* 534 U.S. at 528. The Supreme Court rejected that argument, holding that *Farmer* "trained solely and precisely on proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove." *Id.* at 529. Those questions, *Porter* held, "do not touch or concern the threshold inquiry" at issue there: "whether resort to a prison grievance process must precede resort to a court." *Id.* at 529. For that reason, *Porter* declined to "extend" *Farmer* "from [its] moorings" to antecedent questions raised by the PLRA's exhaustion requirement. *Id.* The same reasoning forecloses reading *Farmer* as having extended a *Bivens* remedy to an Eighth Amendment failure-to-intervene claim.

**B.    Even Apart from *Silva*, This Court Should Decline to Extend *Bivens* to an Eighth Amendment Excessive-Force or Failure-to-Intervene Claim.**

As explained, *Silva* forecloses extending *Bivens* to either an Eighth Amendment excessive-force or failure-to-intervene claim. As our opening brief (at 17-30) explained, a *Bivens* extension to those contexts also is independently foreclosed by the Supreme Court's decisions in *Egbert* and *Abbasi*.

**1.    Excessive-Force Claims**

**a.**    As explained above and in our opening brief (at 17-20), an Eighth Amendment excessive-force claim presents a new *Bivens* context distinct from the *Bivens* Eighth Amendment medical-indifference claim recognized in *Carlson*. That conclusion follows from, among other things, the different elements needed to prove those two kinds of claims and the fact that recognizing a *Bivens* excessive-force claim would impair prison administration to a far greater degree.

Mohamed argues (Br. 36) that his Eighth Amendment excessive-force claims do not present a new *Bivens* context because both he and the plaintiff in *Carlson* are BOP inmates confined in BOP facilities and assert Eighth Amendment claims. *Carlson*, however, did not hold that a BOP inmate confined in a BOP facility can bring anything other than a *Bivens* medical-indifference claim, and as our opening brief noted, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Appellants' Br. 14 (alteration in original) (quoting *Hernandez*, 140 S. Ct. at 743). Thus, Mohamed reads

*Carlson* far too broadly. *See Egbert*, 142 S. Ct. at 1805 (holding that Fourth Amendment excessive-force claims against a Border Patrol agent presented a new *Bivens* context even though those claims were like the Fourth Amendment excessive-force claims in *Bivens* itself and thus "arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury'" (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017))).

**b.**    Multiple special factors preclude extending *Bivens* to an Eighth Amendment excessive-force claim, including the BOP's administrative remedy program (which *Egbert* recognized precludes a *Bivens* extension, 142 S. Ct. at 1806); the risk of impairing the operation of federal prisons; legislative action in the area of prison regulation without recognizing that kind of new claim; the availability of injunctive relief, habeas corpus, and mandamus; and various damages remedies, including Federal Tort Claims Act (FTCA) claims and state-law claims against any BOP officials who act outside the scope of their employment. *See* Appellants' Br. 23-30.

Mohamed contends (Br. 40-41) that *Egbert* involved a different administrative remedy process than the BOP's remedy process. As our opening brief (at 25) explained, however, *Egbert* specifically noted that the BOP's administrative remedy program provides an adequate alternative remedy to a *Bivens* claim and compared that program favorably to the internal agency process at issue there. The BOP's administrative grievance program is a deterrent against staff misconduct, *see id.*, and Mohamed's suggestion (Br. 39) that he is not seeking any "systemwide" changes to the operation of BOP prisons does not mean that extending *Bivens* to this context would not have that

effect. The "risk that fear of personal monetary liability and harassing litigation will unduly inhibit [BOP] officials in the discharge of their duties" precludes a *Bivens* extension, *Egbert*, 142 S. Ct. at 1807 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)), and extending *Bivens* to an Eighth Amendment excessive-force claim would present exactly that risk.

Mohamed's argument (Br. 39) that refusing to extend *Bivens* to Eighth Amendment excessive-force claims would lead to "absurd consequences" also lacks merit. The district court considered it absurd to "allow[] a *Bivens* suit against an officer who failed to treat a prisoner's broken arm but not against an officer who maliciously broke a prisoner's arm." App. Vol. 2 at 324-325. As explained, however, recognizing an Eighth Amendment excessive-force *Bivens* claim would have "systemwide consequences," *Egbert*, 142 S. Ct. at 1804 (quotation marks omitted), for the proper management of federal prisons far beyond what *Carlson* entails with respect to medical treatment. *See* Appellants' Br. 19. For that reason, declining to extend *Bivens* to an Eighth Amendment excessive-force claim would not be "absurd." The district court's reasoning also finds no support in either *Egbert* or *Abbasi* and is directly contrary to *Egbert*'s admonition that "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." 142 S. Ct. at 1803-04 (quoting *Abbasi*, 582 U.S. at 136).

13

The extra-record materials Mohamed addresses (Br. 45) in attempting to show that the BOP's administrative remedy process is supposedly inadequate are irrelevant. For *Bivens*-extension purposes, as explained, the adequacy of an alternate remedy is a question for the Executive, and the Supreme Court (in *Egbert*) and this Court (in *Silva*) have specifically acknowledged that the BOP's administrative remedy process is adequate. *See supra* p. 5. But in any event, the extra-record materials Mohamed discusses do not raise any concerns about the adequacy of the BOP's process.

For example, the BOP Office of Internal Affairs Report that Mohamed cites does not reveal any fair-treatment concerns. The Report notes that in Fiscal Year 2020, BOP's Office of Internal Affairs (OIA) opened investigations against 6,593 employees (out of 36,875 active-duty BOP employees). Report 11. As of March 17, 2021, OIA had resolved those investigations as to 29% of those employees. *See id.* As to that group, OIA found violations with respect to 23.3% of those 445 employees. *See id.* The fact that OIA found misconduct with respect to 23.3% of the investigations it resolved shows that OIA's process is nothing like the "dead end" Mohamed suggests.

Likewise, the fact that 65% of those cases in which the BOP OIA found misconduct resulted only in a written reprimand or suspension (*see* Appellee's Br. 45; Report 14) reflects only that most of the misconduct in question involved failure to follow policy and personnel prohibitions, rather than any kind of inmate abuse. *See* Report 11, 12. Moreover, written reprimand and suspension are serious forms of employee discipline with significant implications for a BOP employee's career, and the

BOP OIA also found that the BOP terminated 34 employees for misconduct reported in 2020, *see* Report 14, even though only five of the reports resolved for that period involved allegations of inmate abuse, *see* Report 12.

In addition, contrary to what Mohamed (Br. 46) alleges, the BOP OIA does consider inmate testimony in evaluating claims of abuse by BOP employees, and the Department of Justice's Office of the Inspector General did not make any finding to the contrary. *See* Department of Justice, Office of the Inspector General, Management Advisory Memorandum 23-001 (Oct. 2022), at 1 & n.1, 3.

### 2.    Failure-to-intervene Claims

We have already shown that an Eighth Amendment failure-to-intervene claim differs from a *Carlson* medical-indifference claim and that special factors preclude extending *Bivens* to the former. Our opening brief (at 15-16) also noted that extending *Bivens* to a failure-to-intervene claim would be even more inappropriate than extending *Bivens* to an excessive-force claim. Mohamed (Br. 40) disagrees with that observation but fails to explain why our point is supposedly incorrect. Mohamed (*id.*) does argue that his failure-to-intervene claims are more serious than his excessive-force claims because the named defendants regarding his failure-to-intervene claims are supervisors. He fails, however, to adequately explain why a constitutional claim against a supervisor would be more serious than one against staff, or why even if so that would make a difference for *Bivens*-extension purposes.

## II.  This Court Has Jurisdiction Over This Appeal Pursuant to the Collateral Order Doctrine.

28 U.S.C. § 1291 provides the courts of appeals with jurisdiction over decisions that are "conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). The district court's orders declining to dismiss Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims, and denying defendants' motion for reconsideration of that order, satisfy each of those conditions.

Those orders satisfy the first *Cohen* factor because if this Court declines to extend *Bivens* to those claims, there will be nothing to do but dismiss them. *See* Appellants' Br. 31. That key point remains true regardless of Mohamed's speculation (Br. 1) that the district court could change its mind and dismiss the claims at issue in this appeal on *Bivens* special-factors grounds at a later point. For example, an order denying a motion to dismiss based on qualified immunity is immediately appealable for legal error even though the court also could theoretically change its mind and grant qualified immunity on summary judgment. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 673-75 (2009); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).

Contrary to what Mohamed (Br. 17) suggests, our opening brief (at 31) did not wrongly represent that Judge Hardiman discussed this first *Cohen* factor in his dissenting opinion in *Graber v. Doe II*, 59 F.4th 603, 611 (3d Cir. 2023) (Hardiman, J., dissenting). Judge Hardiman's dissent expressly addressed *Cohen*'s first factor, *see id.* at 617-18, noting that "[w]here no *Bivens* cause of action lies, courts should 'stop there,'" *id.* at 617 (quoting *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 884 (6th Cir. 2021)), and "'reject' the claim," *id.* (quoting *Hernandez*, 140 S. Ct. at 743).

The district court orders at issue satisfy the second *Cohen* factor because whether a court should extend *Bivens* to a new context is separate from the merits and important. That question is separate from the merits because it turns on two factors that are legally distinct from the merits: (1) whether the context of the case differs from the three contexts in which the Supreme Court has recognized *Bivens* claims and (2) whether special factors preclude a *Bivens* extension. *See* Appellants' Br. 31-32.

In that respect, Mohamed challenges only our supposed citation of Judge Hardiman's *Graber* dissent for the idea that a *Bivens* extension is even more separate from the merits than qualified immunity. Our brief (at 32), however, did not cite Judge Hardiman's *Graber* dissent to support that proposition. Instead, we did so for the principle that qualified immunity "qualifies for immediate appeal under the collateral order doctrine." Appellants' Br. 32; *see Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985)). Mohamed does not address, much less rebut, the grounds on which we argued that a *Bivens* extension is more separate from the merits than qualified immunity. *See*

Appellants' Br. 32 (noting that unlike the *Bivens* special-factors inquiry, qualified immunity can and often does overlap significantly with the merits of a *Bivens* constitutional claim).

Whether a court should extend *Bivens* to a new context is important enough to merit an interlocutory appeal because that issue raises fundamental separation of powers concerns, *see*, *e.g.*, *Egbert*, 142 S. Ct. at 1802-03; *Abbasi*, 582 U.S. at 133, 135; *Will v. Hallock*, 546 U.S. 345, 352-53 (2006), and—similar to interlocutory orders denying qualified immunity—can impair government functioning and interfere with executive autonomy, *see Abbasi*, 582 U.S. at 135.

Mohamed wrongly argues (Br. 18) there are no separation of powers concerns at issue here because this case does not involve national security, border security, international law, or foreign policy. Separation of powers concerns are inherent in recognizing *any* new *Bivens* remedy. As the Supreme Court reiterated in *Egbert*, "[a]t bottom, creating a cause of action is a legislative endeavor." 142 S. Ct. at 1802; *see also Abbasi*, 582 U.S. at 133. Accordingly, the Supreme Court has declined to recognize new *Bivens* remedies outside of the limited contexts Mohamed identifies. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); *Minneci*, 565 U.S. 118; *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Bush*, 462 U.S. 367; *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994). Moreover, despite Mohamed's skepticism (Br. 19), there is no doubt that subjecting prison officials to individual liability for an excessive-force or failure-to-intervene claim could interfere with prison security, *e.g.*, by

causing prison officials to "refrain from taking urgent and lawful action," *Abbasi*, 582 U.S. at 145.

The third *Cohen* factor is satisfied here because extending *Bivens* to an Eighth Amendment excessive-force or failure-to-intervene claim would be effectively unreviewable on appeal from final judgment. Recognizing any new *Bivens* claim creates a "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 142 S. Ct. at 1807 (quoting *Anderson*, 483 U.S. at 638). Those costs are not cured by a final judgment in a *Bivens* defendant's favor, and those same costs render a denial of qualified immunity immediately appealable. *See Mitchell*, 472 U.S. at 526-28.

Mohamed contends (Br. 15) that the Supreme Court rejected this argument in *Will v. Hallock*, 546 U.S. 345, but that is not so. *Will* held that an order refusing to dismiss a claim under the FTCA's judgment bar, 28 U.S.C. § 2676, is not appealable under the collateral order doctrine. *Will* distinguished the FTCA's judgment bar from interlocutory orders denying qualified immunity because the FTCA's judgment bar is not designed to preserve federal officials' willingness to exercise initiative. *See* Appellants' Br. 37 (discussing *Will*, 546 U.S. at 353). By contrast, the *Bivens* special factors analysis *is* designed to protect that interest and honor the separation of powers, which *Will* noted also can be "marshaled in support of" an immediately appealable "interest in avoiding trial." 546 U.S. at 352.

*United States v. Stanley*, 483 U.S. 669, on which Mohamed (Br. 15) also relies, is inapposite. In *Stanley*, the court of appeals had jurisdiction to review an interlocutory order refusing to dismiss a *Bivens* claim on qualified immunity grounds under 28 U.S.C. § 1292(b), not the collateral order doctrine. *See* 483 U.S. at 675. Thus, contrary to what Mohamed suggests, *Stanley* did not hold that *Bivens* special-factors analysis differs from qualified immunity with respect to collateral order jurisdiction. Instead, *Stanley* merely rejected the idea that the Court "should find 'special factors' sufficient to preclude a *Bivens* action only when our immunity decisions would absolutely foreclose a money judgment against the defendant officials." *Id.* at 684. Neither that point nor any of the reasons that support it have anything to do with the collateral order doctrine.

Mohamed argues (Br. 14) that the immediate appealability of an order denying qualified immunity is irrelevant here because defendant Osagie is the only appellant who moved to dismiss based on qualified immunity and because Osagie himself is not raising qualified immunity as a defense in this appeal. In so arguing, however, Mohamed assumes that an interlocutory order extending *Bivens* to a new context can be immediately appealed only when coupled with a qualified immunity appeal. For the reasons stated above and in our opening brief, orders extending *Bivens* to new contexts resemble orders denying qualified immunity in relevant respects. Thus, *Bivens*-extension orders should also be immediately appealable under the collateral order doctrine, standing alone. Mohamed fails to identify any reason why that should not be so, and we have already explained why the Sixth and Third Circuit majorities in *Himmelreich* and

*Graber* erred in concluding that *Bivens*-extension orders are not immediately appealable under the collateral order doctrine, *see* Appellants' Br. 36-40.

Mohamed wrongly contends (Br. 10) that this Court lacks jurisdiction because of Federal Rule of Civil Procedure 54(b), which authorizes a district court to enter a final judgment with respect to fewer than all the claims of all the parties where the court determines there is no just reason for delay. Where, as here, an interlocutory order qualifies as a collateral order, it is immediately appealable as such and without regard to Rule 54(b). *See, e.g., Frew v. Young*, 992 F.3d 391, 397 (5th Cir. 2021); *Securities & Exch. Comm'n v. Capital Consultants LLC*, 453 F.3d 1166, 1170 (9th Cir. 2006) (per curiam); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 401 F.3d 143, 165 (3d Cir. 2005).

Mohamed also notes (Br. 21) that he has several claims pending in district court that are not the subject of this appeal. The collateral order doctrine, however, is intended to allow interlocutory appeal (where the doctrine's requisites are satisfied) in exactly that scenario. *See, e.g., DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1998) (holding that "a pending claim for injunctive relief does not bar our jurisdiction over an interlocutory appeal of a denial of a defense of qualified immunity to a damages claim"). In addition, the *Bivens* special factors arguments we raise here are legal arguments that would not be affected by discovery or any other proceedings below on Mohamed's other pending claims *Cf.* Appellants' Br. 21.

Mohamed (Br. 12) also can derive no support from *Kell v. Benzon*, 925 F.3d 448 (10th Cir. 2019). *Kell* held that this Court examines whether the "entire category of rulings to which the claim belongs can be adequately vindicated on review of a final judgment or by other means." *Id.* at 462 (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 482-83 (10th Cir. 2011)). This appeal satisfies that rule because defendants' position is that the collateral order doctrine provides appellate jurisdiction over any interlocutory order recognizing a *Bivens* extension.

*Tucker v. Faith Bible Chapel International*, 36 F.4th 1021 (10th Cir 2022), which Mohamed (Br. 24) cites, is similarly inapposite. *Tucker* held that an order denying summary judgment based on the First Amendment's ministerial exception is not an immediately appealable collateral order because it "is not analogous to qualified immunity available to government officials." 36 F.4th at 1025. As this Court explained, "the public's interest in a functioning government," which is what permits immediate appeals from the denial of qualified immunity, "is not present when a private religious employer seeks [under the ministerial exception] to avoid liability under Title VII from employment discrimination claims." *Id.* at 1026. Orders extending *Bivens* to new contexts—like orders denying qualified immunity—undermine the public's interest in a functioning government. *See* Appellants' Br. 34-40.

Contrary to what Mohamed (Br. 15) suggests, *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853 (10th Cir. 2016), did not say that if the government had not raised qualified immunity in that appeal, this Court would not have had appellate jurisdiction.

This Court did not reach that question there because the government took both a qualified immunity and a *Bivens* special-factors appeal. *See id.* at 856.

Mohamed wrongly contends that allowing the immediate appeal of *Bivens*-extension orders would "swallow the general rule" against piecemeal appeals. Appellee's Br. 11-12 (quoting *Mohawk*, 558 U.S. at 106). As our opening brief (at 37) explains, allowing interlocutory appeals for a narrow category of orders extending *Bivens* remedies would leave untouched the requirement that final, post-trial judgments normally must precede appeals of fact-based qualified-immunity rulings, *see Johnson v. Jones*, 515 U.S. 304 (1995), or orders declining dismissal based on personal jurisdiction, venue, statute of limitations, or other defenses that do not implicate separation-of-powers concerns.

## Conclusion

For the foregoing reasons and those stated in our opening brief, Mohamed's Eighth Amendment excessive-force and failure-to-intervene claims should be dismissed for lack of an available *Bivens* remedy.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*
COLE FINEGAN
  *United States Attorney*
BARBARA L. HERWIG
  (202) 514-5425
Lowell V. Sturgill Jr.
LOWELL V. STURGILL JR.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

## <u>CERTIFICATE OF COMPLIANCE WITH</u>
## <u>FEDERAL RULE OF APPELLATE PROCEDURE 32(A)</u>

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5763 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
Counsel for Appellants

**CERTIFICATE OF DIGITAL SUBMISSION**

I certify that (1) all required privacy redactions have been made; (2) any required paper copies to be submitted to the court are exact copies of the version filed electronically; and (3) that the electronic submission was scanned for viruses and found to be virus-free.

s/s Lowell V. Sturgill Jr.

Lowell V. Sturgill Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. The brief will be served on the plaintiff, who is proceeding pro se, by hand.

I further certify that I will cause seven paper copies to be delivered to the Court by Federal Express within seven business days of notice that the Court has accepted the brief for filing.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
Counsel for Appellee
